[No. S012531. Aug. 12, 1991.]

In re JAMES F. HORTON II on Habeas Corpus.

COUNSEL

Altshuler & Berzon, Altshuler, Berzon, Nussbaum, Berzon & Rubin, Michael Rubin and Marsha S. Berzon for Petitioner.

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, Richard B. Iglehart, Chief Assistant Attorney General, Marc E. Turchin, Susan L. Frierson and Joan Comparet, Deputy Attorneys General, for Respondent.

OPINION

BROUSSARD, J.—The issue in this case is whether a court commissioner may conduct a trial in a capital case when no oral or written stipulation of the parties authorized him to sit as a temporary judge, but when defense counsel proceeded to trial without objection, knowing that the judge was a court commissioner. Petitioner contends that the right to be tried by a regularly appointed or elected superior court judge is a fundamental and personal one that can only be waived after full admonition of the defendant and after he has entered an express waiver of the right on the record. We conclude that the right is not a fundamental personal one requiring an admonition and express waiver, and that the stipulation necessary to vest the commissioner with authority to try the case can be inferred from the conduct of counsel.

I

Petitioner was charged with the October 11, 1982, murder and robbery of Herschel Bowser. The complaint alleged as special circumstances that petitioner murdered Bowser in the commission of a robbery, and that petitioner had previously been convicted of a murder. An information was filed on October 11, 1983, and petitioner was arraigned in the Norwalk branch of the

Los Angeles County Superior Court on the same date. On April 6, 1984, petitioner's case was transferred to Department E of the Norwalk branch of the Los Angeles County Superior Court, where Los Angeles County Commissioner Michael Cowell presided. The transfer to Department E was automatic under Norwalk's direct calendaring system, and petitioner was not asked to nor did he give his consent to the transfer. The case proceeded to trial, and on April 1, 1985, the jury found petitioner guilty of murder and robbery and found true a felony-murder special circumstance and a prior-murder special circumstance. On April 16, 1985, the jury returned a death verdict. The court formally imposed the sentence of death on petitioner on October 7, 1985. Petitioner's automatic appeal is pending before this court.

On October 17, 1989, petitioner filed a petition for writ of habeas corpus, or in the alternative, a motion for summary reversal. Though the record on appeal had not been completed, he argued that he was entitled to relief either by way of writ of habeas corpus or by way of summary reversal because his trial had been conducted before a court commissioner, and neither he nor counsel had entered a formal written or oral stipulation to trial by a commissioner sitting as a temporary judge. On July 11, 1990, this court issued an order to show cause why the relief prayed for in the petition for writ of habeas corpus should not be granted.

The following facts can be stated on the basis of the allegations in the pleadings in the habeas corpus proceeding. It is uncontroverted that Commissioner Cowell's standard practice was to inquire of all counsel whether a stipulation had been filed appointing him as a temporary judge, and that neither petitioner, nor his counsel, nor the district attorney had ever executed a written stipulation appointing Commissioner Cowell as temporary judge in petitioner's case. It is further uncontroverted that neither Commissioner Cowell nor defense counsel informed petitioner that he had the right to be tried by a regularly appointed or elected superior court judge, that petitioner was not given a copy of a stipulation form to sign, and that he did not, either orally or in writing, stipulate to trial by the commissioner as a temporary judge.

Petitioner alleges that he did not know of his right to trial by a superior court judge, and that if he had been informed of the right, he would not have waived it. He alleges that he did not intend to stipulate to trial by a commissioner. Respondent denies these allegations.

Petitioner's lead counsel executed a declaration stating that petitioner never stipulated, either orally or in writing, to have his trial before a

commissioner, that neither of petitioner's counsel ever discussed the subject of a stipulation, that petitioner was never advised of his right to trial before a regularly appointed or elected superior court judge, and that to the best of counsel's knowledge, petitioner first learned of the right to trial before such a judge when appellate counsel informed him of the right. He further declared that petitioner never authorized him or cocounsel to waive his right, that neither he nor cocounsel ever purported to waive the right on behalf of petitioner, and that it was his opinion that counsel lacked the power to waive the right for petitioner. He explained, however, that he believed at the time of trial that petitioner had signed a written stipulation and that it was on file.

Respondent admits that counsel did not discuss the stipulation with petitioner, but denies that defense counsel did not intend to stipulate and were not authorized to stipulate to trial by a temporary judge, and also denies that they did not actually stipulate by their actions to trial by a temporary judge.

The clerk's and reporter's transcripts prepared in the course of petitioner's trial establish these further facts. At the first hearing in the capital trial before Commissioner Cowell, on April 6, 1984, petitioner was not present. The clerk of the court reminded the court that a stipulation to the commissioner serving as a temporary judge was needed from petitioner. The hearing (on discovery compliance) was put over one week, and the court asked counsel: "Do you promise to get a stipulation when he comes out on that date," and counsel responded: "I will get a stipulation." The bailiff commented that unless the court ordered petitioner out of jail, he would not be present at the continued hearing. The court said: "The Court will order him out, because we do need a stipulation." Counsel responded: "Will the Court permit me to take one to the County Jail. I'll be seeing him, and bring it in and file it." The court stated: "Fine. As long as the stipulation is filed we don't need him present." The hearing ended with this exchange: "The Court: My understanding is that you will secure a stipulation—[¶] Mr. Newton [defense counsel]: Yes, your Honor. [¶] The Court:—on the matter before that date."

Respondent also submits the declaration of Commissioner Cowell that he habitually solicited stipulations to his presiding, that he reminded petitioner's counsel to get a stipulation, that both defense counsel had appeared before him on many occasions and knew that he was a commissioner and that neither had ever declined to stipulate to his presiding in the past. He had no reason to doubt that counsel would obtain and file the necessary stipulation. Petitioner was absent on one or both of the hearing dates. When petitioner finally appeared in his courtroom, Commissioner Cowell assumed

that the stipulation had been filed, and believed that counsel shared this assumption. He added that at the front of his bench is a large nameplate bearing his name and title. In a supplemental declaration filed by petitioner, Commissioner Cowell added that he did not construe counsel's statements at the April 6, 1984, hearing as indicating that petitioner had already agreed to enter into a stipulation.

The reporter's transcript, as well as a settled statement, indicate that petitioner appeared before Commissioner Cowell twice early in the proceedings, once to waive his right to a speedy trial, and once for a continuance. On his third appearance, some 10 months after the case was transferred to Commissioner Cowell's department, there was a *Marsden* hearing (*People* v. *Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44]) at which petitioner attempted to remove his counsel on account of their incompetence. (He had filed a malpractice action against them in the Los Angeles County Superior Court.) He contended that they were not properly preparing the case, that they had refused to contact witnesses whom petitioner had identified, that they had refused to file certain motions, and that they were pressuring him to accept a guilty plea despite his innocence. After a series of rulings adverse to him, and as the court was about to take a time waiver from petitioner, this interchange took place: "[Petitioner:] May I ask you a question? [¶] The Court: Yes, sir. [¶] The defendant: With no offense intended, but are you a Judge or are you a Commissioner? [¶] The court: A Commissioner, Mr. Horton, for this case, you having signed a stipulation, I'm a Judge for all purposes. [¶] The Defendant: I signed it? [¶] The Court: Yes, sir. When the matter was first brought before this Court. No offense intended, no offense taken." The settled statement indicated that after Commissioner Cowell stated that petitioner had signed a written stipulation, petitioner responded, "I signed it" in a questioning tone of voice, and shook his head from side to side to indicate disagreement. He was interrupted by counsel, who spoke to him on another topic. Petitioner dropped the subject and moved on to discuss his motions. The case proceeded to trial and the subject of the stipulation was not renewed until this collateral attack on the judgment.

## II

The judicial power of the state is vested in the Supreme Court, Courts of Appeal, superior courts, municipal courts, and justice courts. (Cal. Const., art. VI, § 1; *McHugh* v. *Santa Monica Rent Control Bd.* (1989) 49 Cal.3d 348, 355 [261 Cal.Rptr. 318, 777 P.2d 91].) The California Constitution provides that the Governor appoints superior court judges when there are vacancies, but that after appointment, on completion of the term, superior court judges must sit for nonpartisan election. (Cal. Const., art. VI, § 16, & art. II, § 6.) It

also provides for qualifications (Cal. Const., art. VI, § 15), a six-year term (Cal. Const., art. VI, § 16), and limited grounds for removal (Cal. Const., art. VI, § 18).

Since 1862, our Constitution has contemplated the use of court commissioners to perform "chamber business" (see Cal. Const. of 1849, art. VI, § 11, as amended Sept. 3, 1862; Cal. Const., former art. VI, § 14), now referred to as "subordinate judicial duties." (Cal. Const., art. VI, § 22; *Rooney* v. *Vermont Investment Corp.* (1973) 10 Cal.3d 351, 361-362 [110 Cal.Rptr. 353, 515 P.2d 297].) In addition, since 1879, our Constitution has permitted a cause to be tried in the superior court by a temporary judge. (Cal. Const. of 1879, former art. VI, § 8; see also Cal. Const., former art. VI, § 5, as amended in 1928.) The original provision was that such a judge must be "a member of the bar, agreed upon in writing by the parties litigant or their attorneys of record, approved by the Court, and sworn to try the cause." (*Ibid.*) This provision was repealed in 1926, but was reinstated in article VI, section 5 in 1928 to provide for trial by a temporary judge "[u]pon stipulation of the parties litigant or their attorneys of record. . . ." (Cal. Const., former art. VI, § 5, as amended in 1928.) The current version of this language, as revised in 1966, provides: "On stipulation of the parties litigant the court may order a cause to be tried by a temporary judge who is a member of the State Bar, sworn and empowered to act until final determination of the cause." (Cal. Const., art. VI, § 21.)[1]

■ The jurisdiction of a court commissioner, or any other temporary judge, to try a cause derives from the parties' stipulation. (*Rooney* v. *Vermont Investment Corp., supra,* 10 Cal.3d at p. 360.) Thus in the absence of a proper stipulation, the judgment entered by the court commissioner in this case would be void. (*People* v. *Tijerina, supra,* 1 Cal.3d at p. 49; *In re Frye* (1983) 150 Cal.App.3d 407, 409-410 [197 Cal.Rptr. 755].)

■ Petitioner contends that the right to be tried by a regularly elected or appointed superior court judge rather than a court commissioner or other temporary judge is a fundamental one, so that he cannot be charged with stipulating to trial by commissioner without a full, on the record admonition regarding his right to trial by a regularly appointed judge, and his personal, knowing and voluntary waiver of that right. He draws an analogy between this case and *Boykin* v. *Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709] and *In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449], which impose requirements of admonition and knowing waiver of a number of fundamental constitutional rights in the context of a guilty plea.

---

[1]The purpose of the revision was to state the substance of the prior provision "concisely in modern terms." (*People* v. *Tijerina* (1969) 1 Cal.3d 41, 48 [81 Cal.Rptr. 264, 459 P.2d 680].)

For several reasons, we do not accept this argument. First, although the original constitutional language providing for temporary judges, as well as the current language of the Code of Civil Procedure,[2] speaks of a written stipulation of the parties litigant, we have ratified a line of cases recognizing that a valid stipulation for purposes of the constitutional provision may arise as a result of the *conduct* of the parties. These cases hold that conduct short of an express oral or written stipulation may be tantamount to a stipulation that a court commissioner may sit as a temporary judge. (*In re Mark L.* (1983) 34 Cal.3d 171, 178-179 [193 Cal.Rptr. 165, 666 P.2d 22]; *E.N.W.* v. *Michael W.* (1983) 149 Cal.App.3d 896, 899-900 [198 Cal.Rptr. 355]; *Estate of Lacy* (1975) 54 Cal.App.3d 172, 182 [126 Cal.Rptr. 432]; *People* v. *Oaxaca* (1974) 39 Cal.App.3d 153 [114 Cal.Rptr. 178]; *Estate of Soforenko* (1968) 260 Cal.App.2d 765, 766 [67 Cal.Rptr. 563]; see also 2 Witkin, Cal. Procedure (3d ed. 1985) Courts, § 283, pp. 306-307.) As one Court of Appeal has said, "An attorney may not sit back, fully participate in a trial and then claim that the court was without jurisdiction on receiving a result unfavorable to him." (*Estate of Lacy, supra,* 54 Cal.App.3d at p. 182.)

The idea that parties may, through their conduct, be held to have stipulated to trial by a court commissioner is not controversial. The tantamount stipulation doctrine apparently first arose in *Estate of Soforenko, supra,* 260 Cal.App.2d 765. In that probate matter, the appellate court explained: "[A]ppellant was represented by an attorney who noted his appearance on the record; he voiced no objection to the matter being heard by the commissioner, and he participated fully in the hearing which ensued. He examined the executor as a witness at some length. He argued appellant's objections to the account, and the asserted inadequacy of the report. At the conclusion of the hearing and in response to the court's inquiry as to findings, the attorney replied 'Findings waived,' as did the attorney for the executor. We construe all this deportment on the part of appellant's attorney as tantamount to a stipulation that the matter could be heard by the commissioner." (*Id.* at p. 766.)

The doctrine was first applied in the criminal context in *People* v. *Oaxaca, supra,* 39 Cal.App.3d 153, where the defendant sought to vacate his guilty

---

[2]Since 1989, Code of Civil Procedure section 259 has provided that subject to the supervision of the court, a court commissioner has the power to "[a]ct as temporary judge when otherwise qualified so to act when appointed for that purpose, or by written consent of an appearing party." (Code Civ. Proc., § 259, subd. (e).) At the time of this trial, however, section 259 simply stated that a commissioner had the power to act as a temporary judge "when otherwise qualified so to act and when appointed for that purpose." (Former Code Civ. Proc., § 259, subd. (4).) While rule 244 of the California Rules of Court also provides for a written stipulation that a case may be tried by a temporary judge, that rule specifies that it does not apply to court commissioners who are selected to act as temporary judges. (Cal. Rules of Court, rule 244.)

plea and sentence on the ground that the judge presiding over them was merely a commissioner. The court relied on *Estate of Soforenko, supra,* 260 Cal.App.2d 765, observing that: "The fact that defendant was represented by an experienced public defender, participated in the plea bargaining, and accepted the sentence which was part of that plea bargain, strongly suggests that the proceedings were in accordance with a de facto stipulation that the commissioner might act as a temporary judge." (*People v. Oaxaca, supra,* 39 Cal.App.3d at p. 161.) The doctrine subsequently has been applied in several juvenile cases. (See *In re Lamonica H.* (1990) 220 Cal.App.3d 634, 640, 644 [270 Cal.Rptr. 60] [dependency proceeding]; *In re P. I.* (1989) 207 Cal.App.3d 316, 322 [254 Cal.Rptr. 774] [wardship proceeding]; *In re Robert S.* (1988) 197 Cal.App.3d 1260, 1264 [243 Cal.Rptr. 459]; but see *In re Heather P.* (1988) 203 Cal.App.3d 1214, 1225 [250 Cal.Rptr. 468]; *In re Damian V.* (1988) 197 Cal.App.3d 933 [243 Cal.Rptr. 185] [termination of parental rights], refusing to apply the doctrine where rule 244 of the California Rules of Court requires a written stipulation.)[3]

We applied the doctrine in *In re Mark L., supra,* 34 Cal.3d 171, where we rejected a district attorney's claim that a court commissioner who took a negotiated plea in a juvenile wardship matter and entered a dispositional order actually lacked authority to sit as a juvenile court judge. "The District Attorney of San Mateo County initiated this [Welfare and Institutions Code] section 602 proceeding. Through his deputy, he willingly appeared before [the commissioner], raising no objection when that officer announced he was proceeding under an *Arbuckle* [*People v. Arbuckle* (1978) 22 Cal.3d 749 (150 Cal.Rptr. 778, 587 P.2d 220, 3 A.L.R.4th 1171)] condition [that the disposition would be by the same judge] and later entered a disposition on that basis. Such conduct, we think, was 'tantamount to a stipulation' that Browning, by virtue of his status as a commissioner, was acting as a temporary judge rather than as a referee." (34 Cal.3d at p. 179.)

The constitutional language providing for trial by a temporary judge has not been interpreted to mean that the authority to stipulate rests solely with the client, or that the client's express stipulation is necessary. On the contrary, the cases establishing the doctrine of tantamount stipulation to trial by a temporary judge refer routinely both to the client's *and* to the attorney's conduct in entering the stipulation. (See *In re Frye, supra,* 150 Cal.App.3d at pp. 408-409; *People v. Oaxaca, supra,* 39 Cal.App.3d at p. 161; but see *In re Samkirtana S.* (1990) 222 Cal.App.3d 1475, 1484 [272 Cal.Rptr. 489] [dic-

---

[3]*In re Heather P., supra,* 203 Cal.App.3d 1214, and *In re Damian V., supra,* 197 Cal.App.3d 933, interpret rule 244 of the California Rules of Court, requiring a written stipulation to the appointment of temporary judges, as mandatory and jurisdictional. By its own terms, however, rule 244 does not apply to the appointment of a court commissioner to sit as a temporary judge. (Cal. Rules of Court, rule 244.)

tum suggests, without analysis, that client must expressly consent to stipulation in normal civil case].) Frequently, *only* the attorney's conduct is discussed and is dispositive. (See *Yetenekian* v. *Superior Court* (1983) 140 Cal.App.3d 361 [189 Cal.Rptr. 458] [attorney's conduct alone analyzed; held not to amount to stipulation]; *Estate of Lacy, supra,* 54 Cal.App.3d at p. 182 [attorney's conduct held tantamount to stipulation]; *People* v. *Benedict* (1969) 2 Cal.App.3d 400, 405 [82 Cal.Rptr. 759] [express stipulation by counsel alone upheld]; *Estate of Soferenko, supra,* 260 Cal.App.2d at pp. 766-767 [counsel's conduct alone tantamount to stipulation].)

Thus, our ratification of the doctrine of tantamount stipulation strongly suggests not only that an express stipulation by the client is unnecessary, but also that counsel's conduct may provide the basis for the tantamount stipulation.

Second, we have already strongly suggested that the right to trial by a regularly appointed or elected superior court judge, rather than a commissioner sitting as a temporary judge, is not so fundamental that it necessitates the kind of admonition and waiver that must precede a guilty plea. In *People* v. *Haskett* (1982) 30 Cal.3d 841 [180 Cal.Rptr. 640, 640 P.2d 776], also a capital case, the defendant contended that his oral stipulation to have a court commissioner preside at his preliminary hearing was ineffective because he had not been admonished regarding his right to have the hearing before a magistrate. We said: "The right to have a magistrate rather than a qualified court commissioner preside at the preliminary hearing is palpably less fundamental than the rights of confrontation, jury trial, and protection from compelled self-incrimination safeguarded in *Boykin* and *Tahl*. Furthermore, there is no inherent danger here, as there is when a plea of guilty is entered, that the defendant will be irretrievably prejudiced by unknowing waiver of the underlying right. To act as magistrate at a preliminary hearing, a court commissioner must attain the status of 'temporary judge.' [Citations.] Consequently, he must be a member of the State Bar and must obtain the 'stipulation of the parties litigant.' [Citation.] Moreover, the law . . . required that . . . the commissioner be appointed and supervised by the trial court and be 'otherwise qualified.' [Citation.] These safeguards minimize the risk that the defendant will be incompetently tried or prejudicially affected by a commissioner acting as magistrate." (*People* v. *Haskett, supra,* 30 Cal.3d at p. 858.)

Our decision in *People* v. *Haskett* (*supra,* 30 Cal.3d 841) seems dispositive on the question whether petitioner was entitled to an admonition regarding his right to trial before a regularly appointed superior court judge. As petitioner points out, however, since Haskett had actually stipulated to a

hearing before a commissioner, that decision is not fully dispositive of the question whether the defendant must personally waive the right. Nonetheless, our refusal to equate the right at stake with the personal rights secured by the decisions in *Boykin* and *Tahl* suggests that no personal waiver is constitutionally required.

We see no indication that the constitutional language authorizing trial by a temporary judge was, as a general proposition, intended to vest in the client, as opposed to counsel, the sole authority to decide whether to stipulate to trial by such a judge. As we have noted, the original constitutional language spoke in terms of a stipulation by the party *or* the attorney of record. (Cal. Const., former art. VI, § 5.) Though the reference to stipulation by the attorney was eliminated in the revision of 1966, we have said that the purpose of the revision was simply to state the prior provision concisely in modern terms, not to change its meaning. (*People* v. *Tijerina, supra,* 1 Cal.3d at p. 48; see also *Sarracino* v. *Superior Court* (1974) 13 Cal.3d 1, 6-8 [118 Cal.Rptr. 21, 529 P.2d 53]; *Estate of Soforenko, supra,* 260 Cal.App.2d at p. 766, fn. 2.) Further, though a statute may refer to procedural steps to be taken by "the parties," normally this language is not taken literally but is interpreted in accordance with the normal rule that procedural steps must be taken for the party by the attorney of record. (See *Boca etc. R. R. Co.* v. *Superior Court* (1907) 150 Cal. 153, 157 [88 P. 718]; *Toy* v. *Haskell* (1900) 128 Cal. 558, 560 [61 P. 89]; see also 1 Witkin, Cal. Procedure (3d ed. 1985) Attorneys, § 188, p. 217.) Finally, the term "stipulation" normally refers to an agreement between attorneys. (See 1 Witkin, Cal. Procedure, Attorneys, *supra,* § 207, at p. 238, and cases cited.)

We must read the constitutional language in light of the general rule that in both civil and criminal matters, a party's attorney has general authority to control the procedural aspects of the litigation and, indeed, to bind the client in these matters. (*Blanton* v. *Womancare, Inc.* (1985) 38 Cal.3d 396, 403 [212 Cal.Rptr. 151, 696 P.2d 645, 48 A.L.R.4th 109]; *People* v. *Hamilton* (1989) 48 Cal.3d 1142, 1163 [259 Cal.Rptr. 701, 774 P.2d 730], and cases cited.) In the civil context, the attorney has authority to enter into stipulations binding on the client in all matters of procedure, though he or she may not stipulate in a manner to " 'impair the client's substantial rights or the cause of action itself.' " (*Blanton* v. *Womancare, Inc., supra,* 38 Cal.3d at p. 404.) Thus the attorney cannot without authorization settle the suit, stipulate to a matter that would eliminate an essential defense, agree to entry of a default judgment, or stipulate to nominal damages. (*Ibid.*; see also *Linsk* v. *Linsk* (1969) 70 Cal.2d 272, 277-278 [74 Cal.Rptr. 544, 449 P.2d 760]; *In re Marriage of Helsel* (1988) 198 Cal.App.3d 332, 337-338 [243 Cal.Rptr. 657].)

In the criminal context, too, counsel is captain of the ship. ■ As we said recently: "When the accused exercises his constitutional right to representation by professional counsel, it is counsel, not defendant, who is in charge of the case. By choosing professional representation, the accused surrenders all but a handful of 'fundamental' personal rights to *counsel's* complete control of defense strategies and tactics." (*People v. Hamilton, supra,* 48 Cal.3d at p. 1163; see also *Townsend v. Superior Court* (1975) 15 Cal.3d 774, 781 [126 Cal.Rptr. 251, 543 P.2d 619]; 1 ABA Standards for Criminal Justice, std. 4-5.2 (2d ed. 1980) pp. 4.65-4.68.) It is for the defendant to decide such fundamental matters as whether to plead guilty (*Brookhart v. Janis* (1966) 384 U.S. 1, 7-8 [16 L.Ed.2d 314, 318-319, 86 S.Ct. 1245]), whether to waive the right to trial by jury (*People v. Holmes* (1960) 54 Cal.2d 442, 443-444 [5 Cal.Rptr. 871, 353 P.2d 583]), whether to waive the right to counsel (*Faretta v. California* (1975) 422 U.S. 806, 834 [45 L.Ed.2d 562, 581, 95 S.Ct. 2525]), and whether to waive the right to be free from self-incrimination (*In re Tahl, supra,* 1 Cal.3d 122, 132). As to these rights, the criminal defendant must be admonished and the court must secure an express waiver; as to other fundamental rights of a less personal nature, courts may assume that counsel's waiver reflects the defendant's consent in the absence of an express conflict. (*People v. Guzman* (1988) 45 Cal.3d 915, 936 [248 Cal.Rptr. 467, 755 P.2d 917].) When the decision is whether to testify (see *People v. Robles* (1970) 2 Cal.3d 205, 215 [85 Cal.Rptr. 166, 466 P.2d 710]) or whether to present a defense at the guilt phase of a capital trial (see *People v. Frierson* (1985) 39 Cal.3d 803, 817-818 [218 Cal.Rptr. 73, 705 P.2d 396]), it is only in case of an express conflict arising between the defendant and counsel that the defendant's desires must prevail. In the latter situation, there is no duty to admonish and secure an on the record waiver unless the conflict comes to the court's attention. (*Id.,* at p. 818, fn. 8.)

■ Contrary to petitioner's claim, the fact that a right is of constitutional stature does not mean that only the defendant can waive the right. (*People v. Guzman, supra,* 45 Cal.3d at p. 935.) We have explained that a right may exist to secure community interests as well as to safeguard personal rights of the defendant to a fair trial or to basic respect as an individual. Thus in the case of the right to trial in the vicinage of the crime, we concluded that though this right is an essential feature of the state and federal constitutional right to jury trial, and is important to protect the accused's constitutional rights, it also is important to vindicate the interests of the community. The right is therefore not comparable to the essential rights to jury trial or to counsel, and counsel has authority to waive it even over the defendant's objection. "A change of venue to ensure a fair trial, even over an accused's objections, does not threaten ' "that respect for the individual which is the lifeblood of the law." ' [Citation.] Nor does the right exist solely to protect

fair and impartial factfinding. Its waiver . . . is a tactical matter within counsel's power to control." (*Id.*, at p. 937.)

Petitioner places great weight on federal authority establishing the primacy of article III courts. (U.S. Const., art. III.) ▮ We are well aware that under article III of the federal Constitution, litigants enjoy a personal interest in being tried by an article III judge, whose independence from other branches of government and from public outcry is secured by life tenure. (*Commodity Futures Trading Comm'n v. Schor* (1986) 478 U.S. 833, 847-848 [92 L.Ed.2d 675, 690-691, 106 S.Ct. 3245]; *Northern Pipeline Co. v. Marathon Pipe Line Co.* (1981) 458 U.S. 50, 57-60 [73 L.Ed.2d 598, 606-608, 102 S.Ct. 2858]; *Pacemaker Diagnostic Clinic of America v. Instromedix* (9th Cir. 1984) 725 F.2d 537, 541 (opn. of Kennedy, J.).) The federal courts have been jealous to protect the judicial power of article III courts, and their care is grounded on the understanding that the founders of our nation considered it essential to the balance of power among the three branches of government that the federal judiciary have lifetime tenure in order to assure their independence from the other branches. (*Northern Pipeline Co. v. Marathon Pipe Line Co., supra*, 458 U.S. at pp. 57-60 [73 L.Ed.2d at pp. 606-608].) We recognize, too, that the United States Supreme Court has found that article III secures both institutional and personal interests, and that it primarily " 'was designed as a protection for the parties from the risk of legislative or executive pressure on judicial decision.' " (*Commodity Futures Trading Comm'n v. Schor, supra,* 478 U.S. at p. 848 [92 L.Ed.2d at p. 691].)

▮ On the other hand, nothing in these cases suggests that a state constitution cannot provide, as our Constitution does, that the parties may consent to trial by a temporary judge. Even in the federal system, the high court has recognized that although article III of the federal Constitution secures a personal right, that right may be waived by consent to trial in a lesser tribunal. (*Commodity Futures Trading Comm'n v. Schor, supra,* 478 U.S. at pp. 848-849 [92 L.Ed.2d at pp. 690-692]; *Pacemaker Diagnostic Clinic of America v. Instromedix, supra,* 725 F.2d at pp. 542-544, 547; *Geras v. Lafayette Display Fixtures, Inc.* (7th Cir. 1984) 742 F.2d 1037, 1041-1042.) Although some circuits have said that when trial is under the Federal Magistrates Act (28 U.S.C. § 636(b)(3)), the act requires that the waiver be express and personal (see *Hall v. Sharpe* (11th Cir. 1987) 812 F.2d 644, 647; *Adams v. Heckler* (7th Cir. 1986) 794 F.2d 303, 307), recent authority from the high court suggests that failure to object may be considered as consent, or at least as waiver of the article III claim. (See *Peretz v. United States* (1991) 501 U.S. __, __ [115 L.Ed.2d 808, 822, 111 S.Ct. 2661, 2669].) In other contexts, too, consent may be expressed by the litigant's conduct. Thus, for example, in the context of hearings before the Commodities

Futures Trading Commission, where there is a right to trial de novo, the waiver need not be express, but can be derived from the conduct of the litigant. (*Commodity Futures Trading Comm'n* v. *Schor, supra,* 478 U.S. at p. 849 [92 L.Ed.2d at pp. 691-692].)

█ The California Constitution, too, is based on the doctrine of the separation of powers, and preserves the fundamental power of the courts to "test legislative and executive acts by the light of constitutional mandate and in particular to preserve constitutional rights, whether of individual or minority, from obliteration by the majority." (*Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 141 [93 Cal.Rptr. 234, 481 P.2d 242].) Our judicial system is grounded on the existence of a nonpartisan, independent judiciary, but our state Constitution, unlike the federal Constitution, also contemplates in the interest of judicial efficiency that the ranks of the regular judiciary may be extended from time to time by qualified temporary judges who serve as officers of the superior court. (See *Estate of Kent* (1936) 6 Cal.2d 154, 158 [57 P.2d 901].)[4] This community interest in judicial efficiency is of constitutional magnitude, and somewhat tempers the individual's interest in trial by a regularly appointed judge. This distinction between our Constitution and the federal Constitution persuades us that litigants lack the essential, personal interest in trial by a regularly appointed judge that requires personal waiver.

Petitioner points to the decision of the United States Supreme Court in *Gomez* v. *United States* (1989) 490 U.S. 858 [104 L.Ed.2d 923, 109 S.Ct. 2237], which held under the Federal Magistrates Act, a federal magistrate lacks jurisdiction to preside over jury selection in a felony trial over the defendant's objection. The court has subsequently explained, however, that under article III of the federal Constitution and under the act, a magistrate may conduct voir dire in a felony trial when the defendant does not object to the procedure. (*Peretz* v. *United States, supra,* 501 U.S. __, __ [115 L.Ed.2d 808, 822, 111 S.Ct. 2661, 2669].) In the particular case, the magistrate secured counsel's verbal representation that the defendant consented to the assignment of the magistrate, but the opinion clearly suggests that a mere failure to object would be fatal. (*Id.,* at pp. __-__ [115 L.Ed.2d at pp. 821-822, 111 S.Ct. at pp. 2668-2669].) Petitioner can take no comfort from this case.

█ In conclusion, in view of our constitutional provision for trial by temporary judge by stipulation, and in view of counsel's traditional authority to act for the client in the procedural aspects of the case, we are confident

---

[4]The provision for temporary judges was omitted from our state Constitution in 1926 since it was contemplated that the newly formed Judicial Council would fill the need for temporary judges by the transfer of judges among counties. (See *Martello* v. *Superior Court* (1927) 202 Cal. 400, 404 [261 P. 476].) After two years, however, the provision was reinstated.

that counsel can enter a stipulation to a temporary judge even though the court has not secured an express waiver from the litigant. The original constitutional language referred to stipulation by an attorney, and the later omission of this language was not intended to change the law. Regardless of the identity of the judge, the defendant retains the basic right to present a defense under the same rule of law applicable in any courtroom in the state. A stipulation to trial by a court commissioner in no way impairs the defendant's right to a hearing. (Compare *Linsk* v. *Linsk, supra,* 70 Cal.2d at p. 278.) Just as counsel has authority to decide whether to challenge a judge under Code of Civil Procedure section 170.6 (*People* v. *Jackson* (1960) 186 Cal.App.2d 307, 317 [8 Cal.Rptr. 849], cited with approval in *People* v. *Frierson, supra,* 39 Cal.3d at p. 813), we think that counsel has authority to enter the stipulation at issue here, without an on the record admonition of the defendant, or the defendant's express, on the record waiver of the right.[5]

## III

Petitioner argues that even if an admonition and express waiver are not required, neither his conduct nor that of his attorneys was tantamount to a stipulation. He relies on declarations, both his own and those of counsel, denying any intent to enter into a stipulation, and his own declaration that he did not know he had a right to a regularly appointed judge, and would not have stipulated to waive that right had he known of it.

Petitioner argues that since neither he nor counsel specifically intended to enter a stipulation, none can be found. We disagree. We have explained that "[u]nder the 'tantamount stipulation' doctrine, the parties confer judicial power not because they thought in those terms; had they done so, the stipulation presumably would be express. Rather, an *implied* stipulation arises from the parties' common intent that the subordinate officer hearing their case do things which, in fact, can only be done by a judge." (*In re Mark L., supra,* 34 Cal.3d at p. 179, fn. 6.) Here, it is uncontroverted that counsel participated fully and vigorously in the trial, at every point treating the commissioner as competent to rule on matters which rest solely in the discretion of a superior court judge. This conduct was a tacit recognition of, and reliance upon, the authority of the commissioner to act as a temporary judge.

Petitioner also refers us to cases calling for a knowing stipulation, and argues that without evidence that he knew he had a right to trial by a

---

[5]We need not decide what should be the court's response to an express conflict between the defendant and his or her attorney on the stipulation, since no such conflict appeared in this case. (Compare *People* v. *Frierson, supra,* 39 Cal.3d at p. 818, fn. 8.)

regularly appointed judge, there can be no knowing stipulation. An examination of the cases exposes petitioner's misunderstanding of them. In *In re Frye, supra,* 150 Cal.App.3d at page 409, there was no indication that either counsel or the defendant in a contempt proceeding were aware that the judicial officer sitting on the bench was a commissioner rather than a judge. In fact counsel, who practiced rarely in the particular superior court, was under the impression that the commissioner was a judge. It was in this context that the reviewing court, in an opinion by Justice Kaufman, held that the constitutional provision regarding temporary judges "contemplates a knowing and voluntary assent" that was absent under the facts of the case. Here, by contrast, it is uncontroverted that both counsel and petitioner were aware that the judge was a commissioner; indeed, counsel had appeared before the same commissioner many times and had always stipulated to his presiding in the past.

Petitioner also relies on *Yetenekian* v. *Superior Court, supra,* 140 Cal.App.3d 361, where counsel announced "ready," under the mistaken impression that the commissioner was sitting only as a master calendar court. The Court of Appeal found no stipulation, since counsel objected to the commissioner's authority as soon as he realized that the commissioner proposed to try the case. This case lends no support to petitioner's position, however, since here counsel never objected to trial by the commissioner, though they were well aware that he was a commissioner and that he proposed to try the case.

Petitioner argues that he cannot be bound by a stipulation to the commissioner sitting as a temporary judge, because he was not "voluntarily before the court," but rather was haled in involuntarily as a criminal defendant. He refers to language in *In re Mark L., supra,* 34 Cal.3d at page 179, where we distinguished two cases finding no stipulation (*People* v. *Tijerina, supra,* 1 Cal.3d 41, and *Rooney* v. *Vermont Investment Corp., supra,* 10 Cal.3d 351) on the ground that "the party asserting the absence of a stipulation had not initiated the disputed proceeding and had participated involuntarily." We did not suggest in *Mark L.,* however, that criminal defendants were exempt from the tantamount stipulation doctrine. In fact we cited with approval the criminal case of *People* v. *Oaxaca, supra,* 39 Cal.App.3d 153, as representing an instance in which the conduct of a criminal defendant's attorney was tantamount to a stipulation that a commissioner would act as a temporary judge. Far from creating an exemption for criminal cases, we carefully explained that in *Tijerina* the defendant was not a willing participant because he had requested a continuance of the hearing to obtain counsel. He was forced to proceed without counsel, so his participation was not tantamount to a stipulation to trial by a temporary judge. (*In re Mark L., supra,* 34 Cal.3d

at p. 179.) The same distinction from *Tijerina* was offered by the court in *People* v. *Oaxaca, supra,* 39 Cal.App.3d at pages 162-163. We explained our decision in *Rooney,* that there had been no stipulation by conduct of the parties in a confession of judgment case, on the grounds that " 'defendants [there] were not notified of any date of hearing and were not present at the presentation to the commissioner of plaintiffs' application for entry of the judgment.' " (*In re Mark L., supra,* 34 Cal.3d at p. 179.)

Here, petitioner was represented by counsel who willingly participated in the trial on petitioner's behalf. This is not a case like *Tijerina,* where the defendant was forced over protest to represent himself in a proceeding he was trying to postpone. Nor is it a case like *Rooney,* where the defendants not only did not participate, they lacked notice of the proceedings, and thus could not be held to have stipulated. Here petitioner, through his counsel, participated in a lengthy trial presided over by a person known to all parties as a court commissioner sitting as a temporary judge. Counsel never objected to proceeding before the commissioner; the first objection came in this collateral attack on the judgment. Further, counsel evinced every intention of securing petitioner's personal written stipulation to trial by the commissioner; that through some oversight they failed to do so does not change the meaning of their conduct. They knowingly presented their motions, objections, and arguments to the commissioner, treating him in every respect as a judge of the superior court, vested with the authority to make binding rulings in a trial involving the most serious of criminal charges. This conduct, we think, satisfied the constitutional requirement that a temporary judge may be authorized to try a cause on the stipulation of the parties litigant.

## IV

Petitioner argues finally that the commissioner's exercise of jurisdiction over his capital trial without any express stipulation to the commissioner's authority violates defendant's state and federal constitutional rights to due process, equal protection, a fair trial, and reliable capital trial proceedings. This argument is presented in the most summary terms and is not supported by any analysis. We fail to see how trial by a commissioner under a tantamount stipulation violates these rights, since the commissioner takes on the mantle of a regularly appointed superior court judge in presiding over the trial and applies all the usual rules and procedures applicable in such a proceeding. Unless all trials by commissioner are unconstitutional under the federal Constitution—an argument petitioner does not make—there seems to

be no basis for questioning the authority of a commissioner sitting as a temporary judge under conduct tantamount to a stipulation to try a capital case.

The order to show cause is discharged and the petition for writ of habeas corpus is denied.

Lucas, C. J., Panelli, J., Kennard, J., Arabian, J., and Baxter, J., concurred.

**MOSK, J.**—I dissent.

Defense counsel stated in open court that they would obtain defendant's signature on a stipulation form to permit the court commissioner to try this capital case.[1] *They never did.* Neglecting to check the file, the commissioner apparently believed a signed stipulation was in the file. *It was not.* Defendant made it clear in open court that he had not signed a stipulation. *He was ignored.* Despite those crucial omissions, the majority approve of one who is not a superior court judge hearing a capital case and imposing a death sentence. This cannot be condoned.

Article VI, section 21 of the Constitution permits a cause to be tried by "a temporary judge" but only on "stipulation of the parties." The operative words are "stipulation" and "parties." This defendant, being a party, must consent to a nonjudge trying his case. The consent must be by the defendant personally, not by the prosecutor, a friend, a spouse, or a lawyer. And certainly, in the *absence of a stipulation by anyone,* not merely by implication.

Indeed, I find it shocking that one who is not a judge chosen by and responsible to society can merely by inference and implication be given the awesome power of determining life or death for a human being.

The majority rationalize that the stipulation necessary to vest the commissioner with authority to try the case could be inferred from the conduct of defense counsel. However, it appears that defense counsel were operating under the mistaken premise that defendant had signed a stipulation form when in fact they had failed to ask for his signature and indeed forgot to even broach the subject. Consequently, defendant never learned that he had the right to be tried by a superior court judge or that he could object to the commissioner sitting as a judge. I fail to see how the necessary stipulation

---

[1] Although this is a habeas corpus matter and Horton is technically the petitioner, since he was the defendant in the underlying criminal trial I refer to him herein as the defendant.

can be inferred from counsel's conduct when their client was not made aware of the existence of the right.

The cases cited by the majority for the proposition that an attorney's conduct alone may substitute for the necessary stipulation are not persuasive. Each case is distinguishable on the ground that counsel acted with their *client's* consent. Thus in *Yetenekian v. Superior Court* (1983) 140 Cal.App.3d 361, 366 [189 Cal.Rptr. 458], no stipulation was found because the attorney informed the court early in the proceedings that his client did not stipulate to the commissioner sitting as a temporary judge. In *People v. Benedict* (1969) 2 Cal.App.3d 400, 405 [82 Cal.Rptr. 759], a stipulation was found because counsel entered into and signed the stipulation for his client. In *Estate of Lacy* (1975) 54 Cal.App.3d 172, 182 [126 Cal.Rptr. 432], and *Estate of Soforenko* (1968) 260 Cal.App.2d 765, 766 [67 Cal.Rptr. 563], although a stipulation was found because the attorneys voiced no objection and fully participated in the proceedings, there was no indication that the clients themselves did not agree to the matter being heard by a commissioner.

Not so here. In the instant case, counsel never—*on defendant's behalf*—expressly objected, expressly agreed, or by their conduct impliedly agreed to the commissioner sitting as a judge. Instead, their conduct merely conformed to their mistaken belief that defendant personally had signed a stipulation. Thus, this is not a situation in which the attorneys sat back, fully participated in the trial, and then on receiving an unfavorable result claimed that the court was without jurisdiction. (*Estate of Lucy, supra,* 54 Cal.App.3d at p. 182.) Rather this appears to be a case of an inexplicably careless, but innocent mistake.

The majority read the constitutional language authorizing trial by temporary judge in light of "the general rule that in both civil and criminal matters, a party's attorney has general authority to control the procedural aspects of the litigation and, indeed, to bind the client in these matters." (Maj. opn., *ante,* at p. 94.) Yet the decision on whether to stipulate to the matter being heard by one who is not a judge is not merely procedural.

A judge, whether temporary or not, is required to adjudicate many critical trial issues including what evidence will be admitted, what objections are meritorious, what instructions are proper, and ultimately what sentence should be pronounced. In a capital case the trial judge has the special duty, whenever the jury returns a verdict of death, to independently review and weigh the evidence of aggravating and mitigating factors and then pronounce sentence. (Pen. Code, § 190.4, subd. (e).) Thus the decision whether to stipulate to trial before a commissioner may very well involve the

substantive rights of the accused. (See *Coleman* v. *McCormick* (9th Cir. 1989) 874 F.2d 1280, 1287 (en banc) ["It is one thing to accept a judge for the purpose of conducting a fair trial, and quite another to accept that judge not only to conduct the trial but to become the sole decisionmaker on the question of life or death."].)

In *Blanton* v. *Womancare, Inc.* (1985) 38 Cal.3d 396, 407 [212 Cal.Rptr. 151, 696 P.2d 645, 48 A.L.R.4th 109], a unanimous court held that an attorney without express authorization did not have implied or apparent authority to submit litigation to arbitration. The client was entitled to a court trial before a qualified judge. In the seminal case of *Linsk* v. *Linsk* (1969) 70 Cal.2d 272 [74 Cal.Rptr. 544, 449 P.2d 760], this court in a unanimous opinion discussed in depth the authority of counsel. Although *Linsk* was a civil case, it dealt with unauthorized action by counsel in the absence of a stipulation by the litigant. Construing the concept that an attorney may bind his client "in any of the steps of an action or proceeding" (Code Civ. Proc., § 283), we held that counsel may act for his client in procedural matters arising during the course of the action, but he may not impair the client's substantive rights. (70 Cal.2d at p. 278.)

Fundamental constitutional rights are not susceptible of waiver except by the defendant personally or by the defendant's approval of a waiver undertaken by counsel. (E.g., *In re Mosley* (1970) 1 Cal.3d 913, 924 [83 Cal.Rptr. 809, 464 P.2d 473] [right to plead not guilty and stand trial]; *People* v. *Holmes* (1960) 54 Cal.2d 442, 443-444 [5 Cal.Rptr. 871, 353 P.2d 583] [jury trial]; *People* v. *Robles* (1970) 2 Cal.3d 205, 215 [85 Cal.Rptr. 166, 466 P.2d 710] [right to testify]; *Townsend* v. *Superior Court* (1975) 15 Cal.3d 774, 785 [126 Cal.Rptr. 251, 543 P.2d 619] (dis. opn. by Mosk, J.) [right to speedy trial].)

To have a capital case, involving the defendant's life or death, tried by a duly qualified judge would seem to be in the same category of fundamental rights.

There are, of course, significant differences between commissioners and judges. Without denigrating the administrative and subordinate judicial services often rendered by commissioners, they do not have the qualifications, responsibilities, independence and protections of judges. This principle is recognized in article VI of the California Constitution creating a judicial appointment and retention procedure designed to foster an independent judiciary. For example, section 18 of article VI provides that judges may be removed from office prior to the completion of their term only for wilful misconduct, persistent failure to perform judicial duties, or other seriously detrimental conduct. Court commissioners, in contrast, are not institutionally

protected by the Constitution and serve solely at "the pleasure of the court appointing [them]." (Gov. Code, § 70142.)

In the instant case the court commissioner lacked authority to preside over defendant's capital trial because defendant personally did not stipulate, as required by the Constitution. I would grant defendant's petition for habeas corpus relief.

Petitioner's application rehearing was denied October 2, 1991. Mosk, J., was of the opinion that the application should be granted.