Filed 10/9/13  P. v. Mohamed CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D062414 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD240372) |
| EBRAHIM MUSSA MOHAMED, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Louis R. Hanoian, Judge.  Affirmed and remanded with directions.

Michael Anthony Hernandez, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel and Warren Williams, Deputy Attorneys General, for Plaintiff and Respondent.

Ebrahim Mussa Mohamed (aka Ebrahim Mohamed Mussa) appeals a judgment following his jury conviction on five counts of assault with a deadly weapon (Pen. Code,

§ 245, subd. (a)(1)[1]) and one count of stalking (§ 646.9, subd. (a)).  On appeal, Mohamed contends: (1) the trial court erred by not obtaining his express waiver of his right to testify; (2) the court erred by receiving the jury's verdict in his absence; and (3) the abstract of judgment must be amended to correctly reflect his convictions.

FACTUAL AND PROCEDURAL BACKGROUND

Mohamed dated Kalkidan Gebremichael from 2009 through February 2012, when she ended their relationship.  On March 13, 2012, she obtained a temporary restraining order against him based on threats he made against her.

At about 11:00 p.m. on April 13, 2012, Gebremichael drove her coworker, Jose Reynosa, to his home after work.  She parked her car in front of his house and they talked for a while.  Mohamed approached Gebremichael's car and repeatedly struck the driver's side window and windshield with an anti-theft steering wheel club.  The windshield shattered.  Gebremichael started her car and drove away with Reynosa, going eastbound on University Avenue.  At the intersection of 35th Street and University Avenue, her car was struck from behind by another vehicle.  Her car was struck from behind three more times at the 38th Street, 40th Street, and 41st Street intersections.  San Diego Police Officer Derrick Young saw Gebremichael's car and a white Honda Accord drive through a red light at the intersection of University Avenue and Chamoune Avenue.  The cars were travelling about 60 miles per hour.  As he turned to initiate a traffic stop, Gebremichael's car immediately pulled over, while the Honda continued eastbound on

---

1       All statutory references are to the Penal Code unless otherwise specified.

2

University Avenue until making a left turn onto 46th Street.  The Honda parked in a parking lot and Mohamed jumped out of it and ran toward Young.  Young ordered Mohamed to stop, but he continued to approach Young with his hand in his jacket.  He then turned around, returned to his car, reentered it, and reached into the back seat.  Young ordered him to exit the car and get on the ground.  Mohamed eventually complied and was arrested.

During a search of Mohamed's car, officers found an anti-theft vehicle club on the floorboard behind the driver's seat and blood on the shifting column.  Mohamed's right hand was bleeding.  When officers spoke with Gebremichael, she appeared to be terrified of Mohamed and described that evening's events.  She feared for her life.

An amended information charged Mohamed with five counts of assault with a deadly weapon (§ 245, subd. (a)(1)) and one count of stalking (§ 646.9, subd. (a)).  It further alleged he had been convicted of a prior "strike" (i.e., serious or violent felony) (§§ 667, subds. (b)-(i), 1170.12, 668), and had a prior stalking conviction (§ 646.9, subd. (c)(2)).  At trial, after the close of the prosecution's case, the defense elected not to present any evidence.  The jury found Mohamed guilty on all six counts.  In a bifurcated proceeding, the trial court found true the prior strike allegation.  The court sentenced Mohamed to a term of eight years in prison for count 1 and concurrent six-year terms for counts 2, 3, and 4.  It imposed a consecutive two-year term for count 5.  It imposed a five-year term on count 6 (stalking conviction), but stayed its execution pursuant to section 654.  Mohamed was sentenced to a total term of 10 years in prison.  He timely filed a notice of appeal.

3

## DISCUSSION

## I

### *Mohamed's Waiver of His Right to Testify*

Mohamed contends the trial court erred by not obtaining his express waiver of his right to testify.

### A

Outside the jury's presence during trial, Mohamed was present when his counsel agreed with the trial court that if he (Mohamed) testified, his prior stalking conviction would be admissible for impeachment purposes. At that time, Mohamed made no statement indicating he wanted to testify.

Later that day, the prosecution rested its case. The trial court then asked Mohamed's counsel how she wanted to proceed. His counsel rested without calling any witnesses or presenting any evidence. Mohamed again made no statement indicating he wanted to testify. The jury later returned a verdict finding him guilty on all charges.

In support of his motion for new trial, Mohamed argued he was denied effective assistance of counsel when he asked his counsel if he could testify and she advised him not to because his prior conviction would then be admissible. The trial court explained to Mohamed that he did not have to follow his counsel's advice and could have testified if he wanted to. The court denied the new trial motion and found the advice of Mohamed's counsel not to testify was "sound advice."

B

A criminal defendant has a constitutional right to testify on his or her own behalf. (*People v. Gutierrez* (2009) 45 Cal.4th 789, 821; *People v. Frierson* (1985) 39 Cal.3d 803, 813.) A defendant can exercise the right to testify despite his or her counsel's advice or objection not to do so. (*People v. Lucas* (1995) 12 Cal.4th 415, 444; *People v. Lucky* (1988) 45 Cal.3d 259, 282.) In the event of an express conflict between a defendant and his or her counsel regarding testifying, a trial court does not have any duty to admonish and secure the defendant's waiver on the record unless that conflict comes to the court's attention. (*In re Horton* (1991) 54 Cal.3d 82, 95.) "A trial court has no duty to give such advice or seek an explicit waiver, unless a conflict with counsel comes to its attention." (*People v. Enraca* (2012) 53 Cal.4th 735, 762.)

C

Mohamed asserts the trial court erred by not obtaining an express waiver of his right to testify. He argues his right to testify is a fundamental constitutional right and therefore, like a *Miranda*[2] waiver, any waiver of his right to testify must be affirmatively shown to be knowing, intelligent, and voluntary. However, Mohamed does not cite any federal or state case so holding and we are not persuaded that a *Miranda*-type procedure is required before a defendant can be found to have waived his or her right to testify at trial.

---

2      *Miranda v. Arizona* (1966) 384 U.S. 436.

5

Citing *U.S. v. Nichols* (2d Cir. 1995) 56 F.3d 403, Mohamed alternatively argues there at least needs to be some evidence that he understood the right he was waiving and the consequences of doing so. However, he does not cite any precedent of the United States Supreme Court or California Supreme Court so holding. Because we are not bound by a decision of a lower federal court, we need not follow *Nichols*. Furthermore, we are not persuaded by Mohamed's argument that a waiver of a defendant's right to testify can be found only if there is evidence showing the defendant understood that right and the consequences of doing so.

We conclude that, absent a conflict between a defendant and his or her counsel that is evident to the trial court, a court need not obtain an express waiver of the defendant's right to testify and there does not need to be evidence showing the defendant understood that right and the consequences of waiving it. (*In re Horton*, *supra*, 54 Cal.3d at p. 95; *People v. Enraca*, *supra*, 53 Cal.4th at p. 762.) In the circumstances of this case, there is no evidence in the record, and Mohamed does not assert, there was any conflict between him and his counsel regarding his testifying at trial. Furthermore, there is no evidence in the record showing Mohamed wanted to testify. He did not notify the trial court of any wish to testify and there is no evidence in the record showing he wanted to exercise his right to testify before or at the time the defense rested. The trial court did not err by not obtaining on the record Mohamed's express waiver of his right to testify.[3]

---

[3] Also contrary to Mohamed's assertion, any error by the trial court in not obtaining his waiver of his right to testify in the circumstances of this case would *not* constitute structural error requiring reversal per se. (Cf. *Arizona v. Fulminante* (1991) 499 U.S. 279, 310; *People v. Flood* (1998) 18 Cal.4th 470, 493.)

Based on the record, the trial court could, and presumably did, reasonably conclude Mohamed implicitly waived his right to testify at trial.

## II

### *Mohamed's Absence When the Jury's Verdict Was Received*

Mohamed contends the trial court erred by receiving the jury's verdict in his absence.

### A

On June 26, 2012, after the close of evidence but before closing arguments, some of the jurors saw Mohamed, apparently ill, fall to the floor. Outside the presence of the jury, the trial court discussed the incident with counsel. The court described the incident, stating:

> "[Mohamed] has been evacuated from the courtroom due to some sort of an illness or seizure or some sort of an incident wherein he passed out as the jurors were about to come in before . . . the next stage of the hearing. [¶] They're taking him to the hospital currently. I think when he was leaving, he was desirous of staying, so I'm not sure how serious the medical emergency is; but nonetheless, we are deprived of his presence because of the medical emergency."

The prosecutor commented that the jurors saw Mohamed fall as they were about to go to their seats. In the jury's presence, the trial court stated:

> "Ladies and gentlemen, you can see that the defendant is not present, and I think many of you, as you were coming in after the last break, saw that the defendant was unwell and had an episode. [¶] We've called the paramedics. He's been taken away. He was conscious and alert as he was being taken away, but we can't proceed without him being here, so that's going to end the day today."

7

The court dismissed the jury until the next morning. Outside the jury's presence, the court stated that it was proceeding as if there were a legitimate medical emergency and had no evidence to suggest otherwise. The court expressed its concern because the bailiff had earlier reported to the court that Mohamed had been talking about suicide. Nevertheless, the court expressed some concern that he might be trying to manipulate the proceedings. The prosecutor commented there had been no indications of any medical concerns prior to the incident and that Mohamed made a "remarkably quick recovery."

At the hospital, a medical evaluation was performed and no apparent physical cause for the seizure or fainting was found. Mohamed was released from the hospital that day and returned to jail, where another examination was performed and no physical cause for the episode was found.

On June 27, Mohamed fell to the ground in jail. The jail's medical staff could not determine any reason for that episode.

On June 28, Mohamed returned to the courtroom and closing arguments were presented. The jury retired for deliberations. Later that afternoon, the jury sent a note to the trial court indicating it had reached a verdict. Apparently about the same time as the court received that note, Mohamed fell to the floor. Paramedics arrived and rendered aid to him. Mohamed's vital signs were normal and he was transported to a hospital for evaluation. Outside the presence of the jury, the court described on the record what had occurred and discussed with counsel how to proceed. Mohamed's counsel stated that she observed him breathing rapidly, begin to shake, and appear to drift off. She stated Mohamed was aware only that the jury had sent a note and not that it had reached a

8

verdict. His counsel argued his episode may have been more anxiety-related than something physical.

The trial court found Mohamed had "feign[ed] the symptoms and the attacks in order to disrupt the proceedings." The court stated Mohamed was conscious, understood what was happening, and was trying to manipulate the proceedings. The court found Mohamed's conduct resulted in an implied voluntary waiver of his presence at trial within the meaning of section 1043, subdivision (b)(2). His counsel requested the court not make such a finding and objected to the court's receiving the jury's verdict without his presence. Citing *People v. Davis* (2005) 36 Cal.4th 510, the court noted that although a defendant has a constitutional right to be present at trial if his or her presence bears a reasonable and substantial relation to the defendant's full opportunity to defend against the charges, the court's receipt of the jury's verdict in Mohamed's absence would not involve that right. The court further found Mohamed's actions that day were taken with the intent to disrupt the proceedings and, as a result of that disruption, it had him removed. In the jury's presence, the court then proceeded to receive its verdict.

B

"Under the Sixth Amendment's confrontation clause, a criminal defendant does not have a right to be personally present at a particular proceeding unless his appearance is necessary to prevent 'interference with [his] opportunity for effective cross-examination.' [Citations.] [¶] Similarly, under the Fourteenth Amendment's due process clause, a criminal defendant does not have a right to be personally present at a particular proceeding unless he finds himself at a 'stage . . . that is critical to [the] outcome' and 'his

9

presence would contribute to the fairness of the procedure.' [Citation.] [¶] Under section 15 of article I of the California Constitution, a criminal defendant does not have a right to be personally present 'either in chambers or at bench discussions that occur outside of the jury's presence on questions of law or other matters as to which [his] presence does not bear a " ' "reasonably substantial relation to the fullness of his opportunity to defend against the charge." ' " ' [Citations.] [¶] Lastly, under sections 977 and 1043 of the Penal Code, a criminal defendant does not have a right to be personally present where he does not have such a right under section 15 of article I of the California Constitution." (*People v. Waidla* (2000) 22 Cal.4th 690, 741-742.)

Section 1043 provides:

"(a) Except as otherwise provided in this section, the defendant in a felony case shall be personally present at the trial.

"(b) The absence of the [defendant] in a felony case after the trial has commenced in his presence shall not prevent continuing the trial to, and including, the return of the verdict in any of the following cases: [¶] . . . [¶] (2) Any prosecution for an offense which is not punishable by death in which the defendant is *voluntarily absent*." (Italics added.)

Section 1148 provides: "If charged with a felony the defendant must, before the verdict is received, appear in person, unless, after the exercise of reasonable diligence to procure the presence of the defendant, the court shall find that it will be *in the interest of justice* that the verdict be received in his absence. . . ." (Italics added.)

"An appellate court applies the independent or de novo standard of review to a trial court's exclusion of a criminal defendant from trial, either in whole or in part, insofar

10

as the trial court's decision entails a measurement of the facts against the law." (*People v. Waidla*, *supra*, 22 Cal.4th at p. 741.)

## C

Mohamed asserts that he did not voluntarily absent himself from the proceedings under section 1043 because it was the actions of paramedics, not him, that removed him from the courtroom and transported him to the hospital before the verdict was received. He argues the trial court erred by concluding he acted to disrupt and delay the proceedings. He further argues the record does not contain sufficient facts to support the court's finding that he was disruptive and voluntarily waived his right to be present under section 1043.

Following the June 28, 2012, courtroom incident, the trial court found Mohamed had "feign[ed] the symptoms and the attacks in order to disrupt the proceedings." The court stated Mohamed was conscious, understood what was happening, and was trying to manipulate the proceedings. The court found his conduct resulted in an implied voluntary waiver of his presence at trial within the meaning of section 1043, subdivision (b)(2). The court further found Mohamed's actions that day were taken with the intent to disrupt the proceedings and, as a result of that disruption, it had him removed. In the jury's presence, the court then proceeded to take its verdict.

We conclude the record contains sufficient facts to support the trial court's findings that Mohamed's symptoms were feigned with the intent to disrupt the proceedings and therefore he voluntarily absented himself from the proceedings pursuant to section 1043, subdivision (b)(2). "[A] trial judge may rely on reliable information,

11

such as statements from jail or court personnel, to determine whether a defendant has waived the right to presence." (*People v. Gutierrez* (2003) 29 Cal.4th 1196, 1205.) In this case, the court relied on its own observations, statements of the prosecutor and defense counsel regarding their observations, statements by paramedics, and other reliable information. The record shows Mohamed had a prior incident during which he appeared to faint and/or fall in the courtroom. On June 26, he appeared to faint as the jury was returning to the courtroom to hear closing arguments. The prosecutor observed that he recovered quickly. Medical examinations revealed no apparent physical cause for any seizure or fainting. During the instant incident on June 28, Mohamed appeared to faint again after the court received a note from the jury during deliberations. Paramedics found his vital signs were normal. The trial court presumably observed both incidents.

Based on the foregoing facts, the court could reasonably infer Mohamed feigned both fainting spells and did so with the intent to disrupt the proceedings. Furthermore, the court reasonably found that by feigning the June 28 fainting spell that resulted in his removal by paramedics, Mohamed voluntarily absented himself from the proceedings and, in particular, the receipt of the jury's verdict within the meaning of section 1043, subdivision (b)(2). To the extent Mohamed cites facts or inferences contrary to those relied on or made by the court, he either misconstrues and/or misapplies the applicable standard of review.

Mohamed also asserts the trial court erred by not expressly finding under section 1148 that it was in the interest of justice to proceed in receiving the jury's verdict in his absence. However, he does not cite any case or other authority setting forth any

12

requirement for a trial court to make an express finding under section 1148 before receiving the jury's verdict in his absence.  On the contrary, the California Supreme Court held in the circumstances of one case that a trial court did not err by making an *implicit* finding under section 1148 that the interest of justice required it to receive a verdict in the defendant's absence.  (*People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 1043.)  Based on our review of the record in this case, we conclude the trial court made an implied finding under section 1148 that in the interest of justice it should receive the jury's verdict in Mohamed's absence.  In so doing, we conclude it did not err.  Mohamed also has not carried his burden on appeal to show the trial court failed to take diligent measures to ensure he appeared in court for the verdict.  By feigning a fainting spell that resulted in his subsequent removal by paramedics, Mohamed voluntarily absented himself from the proceeding.

To the extent Mohamed argues the trial court also violated his federal and state constitutional rights to be present when it received the jury's verdict, his conclusory arguments to that effect are waived and, in any event, are insufficient to persuade us the court so erred.  "The burden of affirmatively demonstrating error is on the appellant." (*Fundamental Investment etc. Realty Fund v. Gradow* (1994) 28 Cal.App.4th 966, 971.) "An appellant must provide an argument and legal authority to support his contentions. This burden requires more than a mere assertion that the judgment is wrong.  'Issues do not have a life of their own:  If they are not raised or supported by argument or citation to authority, [they are] . . . waived.'  [Citation.]  It is not our place to construct theories or arguments to undermine the judgment and defeat the presumption of correctness.  When

13

an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived." (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852; *Landry v. Berryessa Union School Dist.* (1995) 39 Cal.App.4th 691, 699-700 ["[w]hen an issue is unsupported by pertinent or cognizable legal argument it may be deemed abandoned and discussion by the reviewing court is unnecessary"]; *Paterno v. State of California* (1999) 74 Cal.App.4th 68, 105 [conclusory claims did not persuade appellate court].)

Assuming arguendo Mohamed did not waive his constitutional arguments, we nevertheless would conclude he has not persuaded us that in the circumstances of this case either the federal or state Constitution required his presence when the trial court received the jury's verdict. Assuming there is a constitutional right for a defendant to be present at the reading of a verdict, we conclude that right is not absolute and in the interest of justice the verdict could be read in Mohamed's absence due to his voluntary absence from the proceedings. (Cf. *People v. Lewis and Oliver*, *supra*, 39 Cal.4th at p. 1040.) Furthermore, assuming arguendo the court erred by receiving the jury's verdict in Mohamed's absence, we nevertheless would conclude that error was harmless under both the federal and state standards of prejudice. (*Chapman v. California* (1967) 386 U.S. 18, 23-24; *People v. Watson* (1956) 46 Cal.2d 818, 836; cf. *People v. Davis, supra,* 36 Cal.4th at pp. 532-534.) We agree with the People that such an error does not rise to the level of a structural error for which per se reversal of the judgment is required. (*Rice v. Wood* (9th Cir. 1996) 77 F.3d 1138, 1141.)

III

*Amendment of the Abstract of Judgment*

Mohamed contends, and the People agree, that the abstract of judgment must be amended to correctly reflect the offenses of which he was convicted. He correctly argues the abstract erroneously shows that his count 6 conviction was for assault with a deadly weapon (§ 245, subd. (a)(1)). The jury's verdict and the court's judgment show he was convicted of stalking on count 6. Accordingly, we direct the trial court to amend the abstract of judgment to correctly reflect the count 6 stalking offense of which he was convicted (i.e., § 646.9, subd. (a)).

DISPOSITION

The case is remanded to the superior court with directions to amend the abstract of judgment in accordance with the views expressed in this opinion. The court is directed to forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.


McDONALD, J.

WE CONCUR:

McCONNELL, P. J.

O'ROURKE, J.

15