[No. B166718. Second Dist., Div. Seven. Dec. 13, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
CHRISTOPHER OVERBY, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION†]**

---

†Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II through VIII in the majority opinion and the entire concurring and dissenting opinion.

**COUNSEL**

Mark D. Lenenberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Mary Sanchez and Herbert S. Tetef, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ZELON, J.**—The petition for rehearing was granted in this case to consider the impact, if any, of the recent United States Supreme Court decision in *Blakely v. Washington* (2004) 542 U.S. 296 [159 L.Ed.2d 403, 124 S.Ct. 2531] (*Blakely*) on this court's opinion. After considering the petition on

rehearing, we find no reason to alter the opinion in any respect other than to add a final section to address the *Blakely* arguments raised by appellant's petition. We therefore reissue the opinion with the addition of section VIII.

Defendant and appellant Christopher Overby was convicted of attempted murder (Pen. Code,[1] §§ 664, 187, subd. (a)), two counts of first degree burglary (§ 459), first degree robbery (§ 211), forcible sodomy with special circumstances (§§ 286, subd. (c)(2), 667.61, subds. (a), (b), & (e)), and arson of an inhabited structure (§ 451, subd. (b)). Overby seeks reversal of his conviction because the trial court reseated a juror as a remedy for a *Batson-Wheeler*[2] violation without Overby's consent, failed to conduct a hearing to determine whether the jury was tainted by one juror's misconduct, erroneously admitted a bloodstained shirt into evidence, and improperly permitted a sexual assault nurse to testify about statements made by the victim. He also argues that the prosecutor committed misconduct, that his sentence for robbery must be stayed pursuant to section 654, and that the cumulative effect of the errors mandates reversal. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On the night of July 19, 2002, Overby entered Michael Conkey's house in Claremont through a kitchen window. He ransacked the house and stole two watches, a cell phone, and some cuff links. Overby's palm print was found on a window at the point of entry to the house, and his fingerprints were recovered from the car from which Conkey's cell phone was stolen.

Nancy P. lived down the street from Conkey and was home alone on the night of July 19, 2002. Overby entered her home while she slept and awakened her by throwing himself on her and pressing a knife into her side. Nancy P. wrested the knife from Overby by its blade and attempted to escape.

During an extended struggle, Overby tackled Nancy P., choked her, and attempted to tie her wrists together. After she tried to hit him with a clock radio, Overby punched her repeatedly in the face and head, pinned her down on her bed, and penetrated her anus with his penis. When Overby withdrew, he threw a blanket over Nancy P.'s head, turned on the bedroom light, and said, "Look at what you made me do. What am I going to do?"

Overby dragged Nancy P. to the shower to "wash off all the evidence," washing her genital area himself. After the shower, he tied her hands and feet,

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

[2] *Batson v. Kentucky* (1986) 476 U.S. 79 [90 L.Ed.2d 69, 106 S.Ct. 1712] (*Batson*); *People v. Wheeler* (1978) 22 Cal.3d 258 [148 Cal.Rptr. 890, 583 P.2d 748] (*Wheeler*).

gagged her with strips of sheets from the bed, and replaced the blanket over her head. He said he would set fire to the bed to destroy the evidence and asked for lighter fluid; when she denied having any, he left the room and returned with an aerosol product that he used as an accelerant. Overby set fire to the bed, then ran from the house with Nancy P.'s money, jewelry, and postage stamps. Nancy P. freed herself, reported the fire and assault to 911, and escaped her burning house.

On July 20, 2002, at approximately 11:45 a.m., Pattie Reed[3] pawned several pieces of Nancy P.'s jewelry, including her engagement ring. That afternoon, she pawned Nancy P.'s wedding ring and another piece of her jewelry. Five days later, Reed, accompanied by Overby, pawned additional items.

Overby and Reed were arrested together in Reed's car 10 days after the crimes. When arrested, Overby had a healing laceration across his right hand. Blood matching Overby's was found on the driveway of Nancy P.'s house, and sperm recovered from Nancy P.'s body during her sexual assault examination matched his sperm. Police recovered Nancy P.'s watch from Reed's apartment and a new roll of stamps from Reed's car, along with Overby's wallet and a bloodstained shirt.

Overby was charged with the first degree burglary (§ 459) of Conkey's home. In connection with the crimes against Nancy P., Overby was charged with attempted premeditated murder (§§ 664, 187, subd. (a)), first degree burglary (§ 459), first degree robbery (§ 211), forcible sodomy (§ 286, subd. (c)(2)), and arson of an inhabited structure (§ 451, subd. (b)). Overby was alleged to have served a prior prison term within the meaning of section 667.5, subdivision (b), and to have committed the sodomy during a burglary, with the use of a knife, and causing great bodily injury (§ 667.61, subds. (a), (b), & (e)).

The jury found that the attempted murder was not premeditated but otherwise convicted Overby as charged. After a bench trial in which the court found the prior prison term allegation true, the court sentenced Overby to 25 years to life in state prison, plus an additional term of 12 years. Overby appeals.

---

[3] Reed and Overby were tried together; she was convicted of three counts of receiving stolen property (§ 496, subd. (a)). Reed's appeal was dismissed at her request.

## DISCUSSION

### I. *Reseating of Challenged Juror*

■ In *Wheeler, supra,* 22 Cal.3d at p. 282, the California Supreme Court established dismissal of the jury venire as the remedy for the improper use of peremptory challenges to remove prospective jurors on the basis of group bias. The Supreme Court revisited *Wheeler* in *People v. Willis* (2002) 27 Cal.4th 811 [118 Cal.Rptr.2d 301, 43 P.3d 130] (*Willis*), and approved remedies short of dismissing the entire venire, provided that the alternate relief is acceptable to the complaining party. The court explained that in "situations . . . in which the remedy of mistrial and dismissal of the venire accomplish nothing more than to reward improper voir dire challenges and postpone trial . . . with the assent of the complaining party, the trial court should have the discretion to issue appropriate orders short of outright dismissal of the remaining jury, including assessment of sanctions against counsel whose challenges exhibit group bias and reseating any improperly discharged jurors if they are available to serve." (*Id.* at p. 821.)

■ The *Willis* court emphasized that the prevailing party's "waiver or consent is a prerequisite to the use of such alternative remedies or sanctions, for *Wheeler* made clear that 'the complaining party is entitled to a random draw from an entire venire' and that dismissal of the remaining venire is the appropriate remedy for a violation of that right. [Citation.] Thus, trial courts lack discretion to impose alternative procedures in the absence of consent or waiver by the complaining party. On the other hand, if the complaining party does effectively waive its right to mistrial, preferring to take its chances with the remaining venire, ordinarily the court should honor that waiver rather than dismiss the venire and subject the parties to additional delay." (*Willis, supra,* 27 Cal.4th at pp. 823–824.) The Supreme Court did not specify in *Willis* what constitutes consent to an alternate remedy or an effective waiver of the right to a mistrial.

In the proceedings in this case, when the prosecutor exercised a peremptory challenge to excuse a Black juror, Overby's counsel immediately asked the court to order the juror to remain in the courtroom. Having ensured that the juror remained available to be reseated, she then made a *Batson-Wheeler* motion, alleging that the prosecutor improperly used her peremptory challenge to exclude the Black juror—the first Black juror to be peremptorily challenged—because of a presumed group bias based on her race. In her argument, Overby's counsel did not request any specific remedy for the alleged *Batson-Wheeler* violation.

The trial court held a sidebar hearing and concluded, "So at this point I'm going to grant the motion as to Number 9 formally. And I'm going to elect

the remedy to reseat Number 9 rather than the remedy to kick the entire panel." The court then asked counsel if they wished to be heard "as to the court's decision." Both defense counsel said, "Submit," and the prosecutor objected. The challenged juror was reseated and voir dire resumed.

The prosecutor immediately thereafter made a *Batson-Wheeler* motion that was denied. Later that day she requested reconsideration of both *Batson-Wheeler* rulings and argued that the jury venire should be dismissed. At no time during the reconsideration arguments did Overby's counsel state that she agreed that the venire should be dismissed, nor did she indicate any dissatisfaction with the remedy chosen by the court. The motion for reconsideration was denied.

Overby contends that he did not consent to the court's proposed remedy or waive his right to the dismissal of the panel and requests a new trial on the grounds that the trial court should have dismissed the entire venire in the absence of his consent. The Attorney General argues that Overby's conduct here amounted to implied consent to the reseating of the challenged juror as a remedy for the *Batson-Wheeler* violation.

■ The consent required by *Willis, supra*, 27 Cal.4th 811, need not be personally given by the defendant and may be granted by counsel. As a general rule, counsel "has general authority to control the procedural aspects of the litigation and, indeed, to bind the client in these matters." (*In re Horton* (1991) 54 Cal.3d 82, 94 [284 Cal.Rptr. 305, 813 P.2d 1335].) "By choosing professional representation, the accused surrenders all but a handful of 'fundamental' personal rights to *counsel's* complete control of defense strategies and tactics." (*People v. Hamilton* (1989) 48 Cal.3d 1142, 1163 [259 Cal.Rptr. 701, 774 P.2d 730].) The right to request a mistrial or to elect to continue with a particular jury is not one of the constitutional rights deemed to be so personal and fundamental that it may only be personally waived by the defendant. (*People v. Brandon* (1995) 40 Cal.App.4th 1172, 1175 [47 Cal.Rptr.2d 383] ["Although the right to request a mistrial or proceed to a conclusion with the same jury is a fundamental right, the law does not require that it be personally waived by an accused, nor does the law require that an accused be admonished concerning the nature of the right," holding that counsel's consent to a mistrial is deemed the defendant's consent]; *People v. Moore* (1983) 140 Cal.App.3d 508, 513–514 [189 Cal.Rptr. 487] ["We hold the right of the defendant to request a mistrial or proceed to a conclusion with the same jury, though a fundamental one, is one that should and can properly be exercised by experienced legal minds and is not beyond the control of counsel"]; *People v. Allen* (1980) 110 Cal.App.3d 698, 704 & fn. 6 [168 Cal.Rptr. 227].) Accordingly, counsel here was authorized to consent to the court's proposed remedy and to waive Overby's right to a mistrial and new

jury venire. (*In re Horton*, at p. 95 ["as to other fundamental rights of a less personal nature, courts may assume that counsel's waiver reflects the defendant's consent in the absence of an express conflict"].)

■ Overby claims that his counsel did not consent, expressly or impliedly, to the reseating of Juror No. 9. He characterizes his counsel's conduct as "mere silence," and argues that consent or waiver may not be implied from silence. He bases his argument on *Curry v. Superior Court* (1970) 2 Cal.3d 707, 713 [87 Cal.Rptr. 361, 470 P.2d 345], a double jeopardy case in which the Supreme Court held that a defendant's consent to a legally unnecessary mistrial could be inferred only from affirmative conduct and not from silence. Overby urges us to apply the *Curry* rule here, reasoning that if "mere silence in the face of an ensuing discharge [of a jury] cannot be deemed a waiver" (*ibid.*), then silence in the face of a court's stated intent to remedy a *Batson-Wheeler* violation by *not* discharging a jury should not constitute a waiver. *Curry*, however, concerned double jeopardy, an area of law in which the courts have deliberately declined to impose a duty upon the defendant to forewarn the trial court of legal error that will permit the defendant to assert the defense of double jeopardy in subsequent proceedings. It is because the defendant has no obligation to alert the trial court that it is about to err in a manner that sets up a double jeopardy defense that the defendant's silence does not constitute waiver or consent when the court declares a mistrial without legal necessity. (*Ibid.* ["When a trial court proposes to discharge a jury without legal necessity therefor, the defendant is under no duty to object in order to claim the protection of the constitutional guarantee, and his mere silence in the face of an ensuing discharge cannot be deemed a waiver"].) *Curry's* duty-based rationale for declining to imply consent or waiver from silence is not applicable in the *Batson-Wheeler* context, where litigants waive their objections to the improper use of peremptory challenges if they do not assert them in a timely manner. (*People v. Anderson* (2001) 25 Cal.4th 543, 568 [106 Cal.Rptr.2d 575, 22 P.3d 347].)

■ Overby's counsel's conduct, moreover, was not "mere silence," and it persuades us that she implicitly consented to the alternate remedy proposed by the court. When the first Black juror was excused by the prosecutor, Overby's counsel immediately asked the court to prevent her departure from the courtroom. As the only reason to ask that the juror remain was so that she could be reseated if the *Batson-Wheeler* motion were successful, it is clear that Overby's attorney intended at least to preserve the possibility of reseating the challenged juror. Counsel acted to ensure that the remedy ultimately selected was available to the court, prevailed on her motion, and then declined the opportunity to object to the appropriateness of the reseating remedy proposed by the court. When the court asked counsel by name if she wanted to present any argument on the court's tentative decision, she responded, "Submit." The primary definition of "submit," as was noted in

*In re Richard K.* (1994) 25 Cal.App.4th 580, 588 [30 Cal.Rptr.2d 575], is "to yield to, to surrender or to acquiesce," and counsel's choice to decline the opportunity to advocate any particular remedy-after having just argued at length the merits of her successful motion-suggests her acquiescence in the remedy the court proposed.

Overby argues that for an attorney to say "submit" is "merely [to] put the ball in the trial court's court for decision." The word is often used to advise a court that a party has presented all his or her arguments and evidence and does not object to the court ruling without further debate. (*In re Richard K.*, *supra*, 25 Cal.App.4th at p. 588 ["after the parties present evidence and argue their respective positions, they will 'submit' the matter, asking the court to rule without further argument"].) Here, however, counsel's use of the term "submit" cannot be interpreted as intended to communicate to the court that she had completed her argument on the appropriate remedy *because she had not made any argument or stated any position concerning remedies*. Overby's counsel won her *Batson-Wheeler* motion challenging the dismissal of a single juror and was offered a remedy that effectively undid the peremptory challenge of which she had complained. In light of this remedy, which " 'vindicate[d] all the rights supported by the principles' " (*Willis, supra*, 27 Cal.4th at p. 820), counsel's express repudiation of the court's offer to comment or argue about the appropriate remedy can only be understood as an indication of consent to the remedy the court suggested.

Our conclusion that Overby's counsel implicitly approved the reseating of the challenged juror is reinforced by the fact that she did not alter her position or indicate dissatisfaction with the reseating remedy even after having time and opportunity to consider it further. Later that day, well after the court had reseated the challenged juror and denied the prosecutor's *Batson-Wheeler* motion, the prosecutor asked the court to reconsider its rulings. The prosecutor requested the dismissal of the venire even if, upon reconsideration, the court would not grant her *Batson-Wheeler* motion: she asked that "[E]ven if [the court is] not granting the prosecution's [motion], regardless, to quash this venire. We have to start over." Overby's attorney did not express displeasure with the court's remedy or state a preference for a new panel.

Although counsel's implied consent to the alternate remedy may be discerned from the record in the present case, we emphasize that it would be preferable and advisable for the trial court to ensure that the record reflects the express consent of the prevailing party whenever an alternate remedy authorized by *Willis, supra*, 27 Cal.4th 811, is employed. An express consent ensures both that the aggrieved party has received a remedy the party deems appropriate to redress the constitutional violation found by the court and that

the record will reflect the party's assent should the question arise on appeal. The time required to obtain from the prevailing party's counsel a brief but explicit waiver of the dismissal of the entire venire and consent to the remedy selected is minimal, particularly in light of the requirement of a retrial if consent or waiver is not expressly secured and cannot be inferred from the record.

    II.–VIII.*

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

## DISPOSITION

The judgment is affirmed.

Woods, J., concurred.

**JOHNSON, Acting P. J.,** Concurring and Dissenting.—*

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

Appellant's petition for review by the Supreme Court was denied March 2, 2005. George, C. J., did not participate therein. Kennard, J., was of the opinion that the petition should be granted.