76 Cal.Rptr.3d 383 (2008)
162 Cal.App.4th 935
The PEOPLE, Plaintiff and Respondent,
v.
Albert Andrew ALBILLAR et al., Defendants and Appellants.
No. B194358.
Court of Appeal of California, Second District, Division Six.
May 5, 2008.
*387 Vanessa Place, under appointment by the Court of Appeal, for Albert A. Albillar, Appellant.
Sharon Jones, under appointment by the Court of Appeal, Ventura, for Alex Adrian Albillar, Appellant.
Conrad Peterman, under appointment by the Court of Appeal, for John Madrigal, Appellant.
*388 Edmund G. Brown Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Senior Assistant Attorney General, Michael C. Keller, Douglas L. Wilson, Deputy Attorneys General, for Plaintiff and Respondent.
YEGAN, J.
A person who joins a criminal street gang, boasts of his membership, and commits crimes with fellow gang members, is in a poor posture to complain about evidence of gang association. A trial is a search for the truth and no defendant has the right to an antiseptic trial where the jury is deprived of a full and relevant evidentiary presentation. (See e.g., People v. Zack (1986) 184 Cal.App.3d 409, 415, 229 Cal.Rptr. 317). Here the trial court, consistent with both the law and common sense, exercised its discretion and allowed this evidence in a unitary trial. As we shall explain, despite their best efforts to present this as something other than a "gang" rape, appellants have failed to do so.
Albert Andrew Albillar (Albert), Alex Adrian Albillar (Alex), and John Anthony Madrigal appeal from the judgment entered following their conviction by a jury of the forcible rape of Amanda M. while acting in concert (Pen.Code, §§ 261, subd. (a)(2), 264.1),[1] the forcible sexual penetration of Amanda M. while acting in concert (§§ 289, subd. (a)(1), 264.1), and active participation in a criminal street gang. (§ 186.22, subd. (a).) The jury found true enhancement allegations that the rape and sexual penetration offenses had been committed for the benefit of, at the direction of, or in association with a criminal street gang. (§ 186.22, subd. (b).) In addition, the jury convicted Albert of unlawful sexual intercourse with Carol M. (§ 261.5.) The trial court found true enhancement allegations that Alex had been convicted of a prior serious felony (§ 667, subd. (a)(1)) and had served a prior prison term. (§ 667.5, subd. (b).) As to all of the appellants, the court struck the gang enhancement on the sexual penetration offense. As to Alex, the court struck the prior prison term enhancement. It sentenced appellants to state prison as follows: Albert-20 years; Alex-24 years, 4 months; Madrigal-19 years, 4 months.
Appellants contend that the trial court committed reversible error in failing to dismiss the entire jury venire after it had granted their Wheeler-Batson motion. (People v. Wheeler (1978) 22 Cal.3d 258, 148 Cal.Rptr. 890, 583 P.2d 748 (Wheeler); Batson v. Kentucky (1986) 476 U.S. 79, [106 S.Ct. 1712, 90 L.Ed.2d 69] (Batson).) Appellants also contend that (1) the trial court erroneously denied their motion to sever the gang charge (§ 186.22, subd. (a)) and bifurcate the gang enhancements (§ 186.22, subd. (b)(1)(C)); (2) the admission of gang evidence violated their right to due process; (3) the evidence is insufficient to support the true findings on the gang enhancements and the convictions on the gang charge; (4) the true findings on the gang enhancements and the convictions on the gang charge violated appellants' First Amendment right of freedom of association; and (5) the trial court erroneously denied appellants' motion for a new trial. We affirm.

Facts
Southside Chiques is a criminal street gang based in the Oxnard area. It has more than 150 members. Appellants, who resided in Thousand Oaks, are active members of the gang. Albert and Alex are twin brothers. Madrigal is their cousin.
*389 Amanda M. was 15 years old, and appellants were aware of her age. She knew that appellants were members of Southside Chiques. In her presence, Albert had flashed a gang sign and had said the name of his gang. He had shown her his gang tattoos. She had also seen gang tattoos on Madrigal's body. Alex told her that he had been "jumped" into Southside Chiques.
Amanda M. knew appellants' gang monikers. Albert's moniker was "Sneaky," Madrigal's was "Spanky," and Alex's was "Monstro." In Spanish, "monstro" means monster.
On December 29, 2004, appellants, Amanda M., Carol M., and another girl, Adriana, went to appellants' apartment. Carol M. was 14 years old. Inside a bedroom, Albert and Carol M. engaged in an act of sexual intercourse. Thereafter, Carol M. became upset and asked to be driven home.
Appellants agreed to drive all of the girls home. After dropping off Carol M. and Adriana, appellants returned with Amanda M. to their apartment because one of the appellants said that he wanted to use the bathroom.
Amanda M. and Albert walked into a bedroom. After closing the bedroom door, Albert pulled Amanda M. down onto the bed and started kissing her. He removed her pants, but not her underwear. Amanda M. was "okay with that."
Alex and Madrigal opened the bedroom door. One of them said, "Can we get in?" Amanda M. "yelled `No' and `Get out.'" Alex and Madrigal entered the bedroom, where Amanda M. was lying on her back on the bed. Madrigal grabbed one of Amanda M.'s legs, and Albert grabbed the other leg. Alex got on top of her, held her hands above her head, "pulled [her] underwear aside and put his finger inside [her] vagina." Amanda told Alex to "get off of [her] and stop." She tried to close her legs, but was unable to do so because Madrigal and Albert were holding them open. Amanda was scared.
Alex put his penis inside Amanda M.'s vagina and had sexual intercourse with her. When he was through, he got off of Amanda M. and Madrigal got on top of her. Amanda M. slapped Madrigal. He said, "You don't even know what you just did." Madrigal then bit Amanda M. on her thigh and shoulder. He put his fingers inside her vagina and tried to kiss her on the mouth. Amanda M. moved her head from side to side to prevent him from kissing her. Madrigal put his penis inside Amanda M.'s vagina. At this point, Alex and Albert were standing in the doorway of the room, "[w]atching and giggling." Amanda M. could hear them laughing.
Madrigal got off of Amanda M. and left the bedroom. Amanda M. tried to get up from the bed, but Albert pushed her back down. Albert got on top of Amanda M. He put his fingers and then his penis inside her vagina. Amanda M. "was tired of fighting it, so [she] just laid back, and [she] just went to another state of mind pretty much." Albert removed his penis from Amanda M.'s vagina and ejaculated on her stomach. He then left the room.
Amanda M. got up from the bed, cleaned herself, and put on her clothes. Appellants drove her home. She walked to a park and cried. She stayed there for several hours and then returned to her home. She did not tell anyone what had happened. However, the next day she told Carol M., and the day after that she told another friend, Susy C.
About a week later, Jazmin S. telephoned Amanda M. and told her that, if she reported the crimes to the police, she and her family could be hurt. Jazmin S.'s boyfriend was a member of Southside Chiques. *390 Amanda M. got scared and told her parents what had happened. Her father reported the incident to the police.
The following day a police sergeant interviewed Amanda M. She told him that, after the incident, "she did not want to tell anyone because she feared that since [appellants] were gang members they will come after her family." She said that appellants "are aware that she told Carol [M.] and that they were going to have someone come over to her house and hurt her."
Detective Neail Holland, an expert on criminal street gangs in Oxnard, opined that appellants' rape of Amanda M. was committed for the benefit of and in association with Southside Chiques. A gang member would lose status by "not supporting other gang members when they're out committing crimes...." But he also opined that rape is "frowned upon in Hispanic gang culture." If a gang member were convicted of rape, he would "lose status within the gang."

Wheeler-Batson Motion
"`[Under Wheeler,] [a] prosecutor's use of peremptory challenges to strike prospective jurors on the basis of group biasthat is, bias against "members of an identifiable group distinguished on racial, religious, ethnic, or similar grounds"violates the right of a criminal defendant to trial by a jury drawn from a representative cross-section of the community under article I, section 16 of the state Constitution. [Citations.][2] [Under Batson,] [s]uch a practice also violates the defendant's right to equal protection under the Fourteenth Amendment. [Citations.]'" (People v. Zambrano (2007) 41 Cal.4th 1082, 1104, 63 Cal.Rptr.3d 297, 163 P.3d 4.)
Here the trial court granted appellants' Wheeler-Batson motion because of the prosecutor's allegedly race-based exercise of a peremptory challenge against a juror of Hispanic descent. As a remedy for the prosecutor's improper peremptory challenge, the trial court reseated the juror. Appellants contend that the trial court committed reversible error in failing to dismiss the entire jury venire.
In Wheeler our Supreme Court concluded "that dismissal of the remaining jury venire was the sole remedy for an exercise of peremptory challenges based on group bias." (People v. Willis (2002) 27 Cal.4th 811, 818, 118 Cal.Rptr.2d 301, 43 P.3d 130.) But our Supreme Court now permits trial courts to invoke alternative remedies, such as reseating the improperly challenged juror, if the complaining party consents or waives the remedy of dismissal of the jury venire. (Id., at p. 821, 118 Cal.Rptr.2d 301, 43 P.3d 130.) "[T]rial courts lack discretion to impose alternative procedures in the absence of consent or waiver by the complaining party. On the other hand, if the complaining party does effectively waive its right to mistrial, preferring to take its chances with the remaining venire, ordinarily the court should honor that waiver rather than dismiss the venire and subject the parties to additional delay." (Id., at pp. 823-824, 118 Cal. Rptr.2d 301, 43 P.3d 130.)
Appellants never requested the dismissal of the jury venire, and they did not object to the reseating of the improperly challenged juror. By their silence, appellants impliedly consented to the reseating of the juror as an alternative remedy *391 for the Wheeler-Batson violation. (People v. Overby (2004) 124 Cal.App.4th 1237, 22 Cal.Rptr.3d 233.)[3] A contrary rule permitting a defendant to complain for the first time on appeal, i.e., without having objected or moved to dismiss the jury venire, "would deprive the People [and the trial court] of the opportunity to cure the defect at trial and would `permit the defendant to gamble on an acquittal at his trial secure in the knowledge that a conviction would be reversed on appeal.' [Citations.]" (People v. Rogers (1978) 21 Cal.3d 542, 548, 146 Cal.Rptr. 732, 579 P.2d 1048.)
Motion to Sever the Gang Charge and Bifurcate the Gang Enhancements
Appellants claim that the trial court erred in denying their motion to sever the gang charge (§ 186.22, subd. (a)) and bifurcate the gang enhancements (§ 186.22, subd. (b)(1)(C)). We review the denial of the motion for abuse of discretion. (People v. Hernandez (2004) 33 Cal.4th 1040, 1048, 16 Cal.Rptr.3d 880, 94 P.3d 1080 [bifurcation of enhancement]; People v. Marshall (1997) 15 Cal.4th 1, 27, 61 Cal.Rptr.2d 84, 931 P.2d 262 [severance of charges].) "An abuse of discretion may be found when the trial court's ruling `"falls outside the bounds of reason."' [Citation.]" (People v. Bradford (1997) 15 Cal.4th 1229, 1315, 65 Cal.Rptr.2d 145, 939 P.2d 259.)
"Severance of charged offenses is a more inefficient use of judicial resources than bifurcation because severance requires selection of separate juries, and the severed charges would always have to be tried separately; a bifurcated trial is held before the same jury, and the gang enhancement would have to be tried only if the jury found the defendant guilty." (People v. Hernandez, supra, 33 Cal.4th at p. 1050, 16 Cal.Rptr.3d 880, 94 P.3d 1080.)
"`[T]he propriety of a ruling on a motion to sever counts is judged by the information available to the court at the time the motion is heard.' [Citation.]" (People v. Ochoa (1998) 19 Cal.4th 353, 409, 79 Cal.Rptr.2d 408, 966 P.2d 442.) Therefore, "[w]e examine the record before the trial court at the time of its ruling to determine whether the court abused its discretion in denying the severance motion. [Citation.]" (People v. Catlin (2001) 26 Cal.4th 81, 110-111, 109 Cal.Rptr.2d 31, 26 P.3d 357, fn. omitted.)
Alex filed a written motion to sever the gang charge, arguing that gang evidence would be highly inflammatory and irrelevant to the other charges. Such evidence, he maintained, is "merely a red herring offered by the prosecution to cast the defendants in ... as negative [a] light as possible." Its admission would "lead the jury to conclude that defendant is a dangerous person and more likely to commit a rape, especially a rape in concert." The other appellants joined in Alex's motion.
*392 At the hearing on the motion to sever, the prosecutor argued that gang evidence would be admissible to show why Amanda M. had waited a week to report the crimes to the police and "why she [had reported the crimes] when she did." The prosecutor said that Amanda M. would testify that, prior to the incident, appellants had "admitted their gang membership to her" and that she had been "aware of their gang tattoos" and "their gang monikers." The prosecutor also pointed out that, if the motion were granted, "[w]e would essentially have two jury trials...." "[Amanda M.] will essentially have to testify twice, and every witness involved in that will have to testify twice."
In denying the motion to sever, the trial court observed that the gang charge and enhancements would be no more prejudicial than the rape in concert charge. The court stated: "I don't see how it's going to benefit anyone by severing this except to try this case twice, and that means putting the witnesses and the victims ... on the stand twice to talk about the same thing."
"`"The-burden is on the party seeking severance to clearly establish that there is a substantial danger of prejudice requiring that the charges be separately tried." [Citation.]'" (People v. Bradford, supra, 15 Cal.4th at p. 1315, 65 Cal. Rptr.2d 145, 939 P.2d 259.) "No abuse of discretion in denying severance will be found absent that showing in the trial court." (People v. Bean (1988) 46 Cal.3d 919, 939, fn. 8, 251 Cal.Rptr. 467, 760 P.2d 996.) "`"The determination of prejudice is necessarily dependent on the particular circumstances of each individual case, but certain criteria have emerged to provide guidance in ruling upon and reviewing a motion to sever trial." [Citation.] Refusal to sever may be an abuse of discretion where: (1) evidence on the crimes to be jointly tried would not be cross-admissible in separate trials; (2) certain of the charges are unusually likely to inflame the jury against the defendant; (3) a "weak" case has been joined with a "strong" case, or with another "weak" case, so that the "spillover" effect of aggregate evidence on several charges might well alter the outcome of some or all of the charges; and (4) any one of the charges carries the death penalty or joinder of them turns the matter into a capital case. [Citations.]' [Citations.] [¶] Furthermore, ... the criteria ... are not equally significant. `[T]he first step in assessing whether a combined trial [would have been] prejudicial is to determine whether evidence on each of the joined charges would have been admissible, under Evidence Code section 1101, in separate trials on the others. If so, any inference of prejudice is dispelled.' [Citations.] Cross-admissibility suffices to negate prejudice, but it is not essential for that purpose." (People v. Bradford, supra, 15 Cal.4th at pp. 1315-1316, 65 Cal. Rptr.2d 145, 939 P.2d 259.) "[Complete cross-admissibility is not necessary to justify joinder. [Citation.] The state's interest in joinder gives the court broader discretion in ruling on a motion for severance than it has in ruling on admissibility of evidence. [Citation.]" (People v. Cummings (1993) 4 Cal.4th 1233, 1284, 18 Cal. Rptr.2d 796, 850 P.2d 1.)
Based on the record before the trial court at the time of its ruling, it could have reasonably concluded that gang evidence would be admissible at a separate trial on the rape and sexual penetration charges to explain why Amanda M. had delayed reporting the crimes to the police. It was reasonable to infer that, because Amanda M. knew that appellants were gang members, she had feared retaliation. (See People v. Martinez (2008) 158 Cal.App.4th 1324, 1333, 70 Cal.Rptr.3d 680 [witnesses' failure to remember *393 their previous identification of gang member as perpetrator of crime "raises a reasonable inference they were too afraid to do so at trial based on defendant's gang status...."].) The reasonableness of this inference was confirmed by evidence presented at the trial. A police sergeant testified that Amanda M. had told him that, because she knew appellants were gang members, she feared that they would harm her or her family if she reported the incident.
The court could also have reasonably concluded that gang evidence would be admissible at a separate trial on the rape and sexual penetration charges to prove the acting-in-concert allegations. Likewise, the court could have reasonably concluded that evidence of the rape and sexual penetration of Amanda M. by gang members would be admissible in a separate trial on the gang charge. One of the elements of the gang charge is that the defendant "willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang ...." (§ 186.22, subd. (a).) Because evidence of the crimes would be cross-admissible in separate trials, "`any inference of prejudice is dispelled.'" (People v. Bradford, supra, 15 Cal.4th at p. 1316, 65 Cal.Rptr.2d 145, 939 P.2d 259.)
Even if appellants had demonstrated in the trial court that evidence of the crimes would not be cross-admissible, they still failed to establish that one charge was significantly more likely to inflame the jury than the other charge. Nor did they show that evidence of guilt on one charge was significantly stronger than on the other charge, "creating the danger that [the stronger] case would be used to bolster the weaker case...." (People v. Bradford, supra, 15 Cal.4th at p. 1318, 65 Cal.Rptr.2d 145, 939 P.2d 259; see also People v. Carter (2005) 36 Cal.4th 1114, 1155-1156, 32 Cal.Rptr.3d 759, 117 P.3d 476; People v. Mayfield (1997) 14 Cal.4th 668, 721, 60 Cal.Rptr.2d 1, 928 P.2d 485 [in addition to showing absence of cross-admissibility of evidence, to establish prejudice defendant "must show also, for example, that evidence of guilt was significantly weaker as to one group of offenses, or that one group of offenses was significantly more inflammatory than the other"].)
"The benefits to the state of joinder, on the other hand, were significant. Foremost among these benefits is the conservation of judicial resources and public funds. A unitary trial requires a single courtroom, judge, and court attaches. Only one group of jurors need serve, and the expenditure of time for jury voir dire and trial is greatly reduced over that required were the cases separately tried. In addition, the public is served by the reduced delay on disposition of criminal charges both in trial and through the appellate process. These considerations outweigh the minimal likelihood of prejudice through joinder of the charges in this case." (People v. Bean, supra, 46 Cal.3d at pp. 939-940, 251 Cal. Rptr. 467, 760 P.2d 996.)[4]
The trial court, therefore, did not abuse its discretion in denying the motion to sever the gang charge. Since gang evidence would be admissible to prove that charge, it follows that the trial court also *394 did not abuse its discretion in denying the motion to bifurcate the gang enhancements. "Virtually all of the gang evidence which would be admissible on the gang enhancements would also be admissible on the street terrorism [gang] charge. Thus the jury would hear the evidence during trial of the substantive gang offense." (People v. Burnell (2005) 132 Cal.App.4th 938, 948, 34 Cal.Rptr.3d 40.)
But this does not end the matter. "Even if a trial court's severance or joinder ruling is correct at the time it was made, a reviewing court must reverse the judgment if the `defendant shows that joinder actually resulted in "gross unfairness" amounting to a denial of due process.' [Citation.]" (People v. Mendoza (2000) 24 Cal.4th 130, 162, 99 Cal.Rptr.2d 485, 6 P.3d 150.) Appellants have failed to carry this burden. The jury was instructed pursuant to CALCRIM No. 1403, which limited the purpose of the gang evidence. We presume that the jury followed this instruction. (People v. Yeoman (2003) 31 Cal.4th 93, 139, 2 Cal.Rptr.3d 186, 72 P.3d 1166.)

Receipt of Gang Evidence Did Not Violate Due Process
We reject Albert's contention that the admission of gang evidence violated his right to due process because "there was no point on which [his] gang status was relevant to his underlying offense." As discussed in the preceding section, gang evidence was relevant to explain why Amanda M. had delayed reporting the crimes to the police and to prove the acting-in-concert allegations. In any event, gang evidence was properly admissible to prove the gang charge and enhancements.
Substantial evidence also supports the jury's determination that the crimes were committed with the specific intent to promote, further, or assist in criminal conduct by gang members. "Commission of a crime in concert with known gang members is substantial evidence which supports the inference that the defendant acted with the specific intent to promote, further or assist gang members in the commission of the crime. [Citation.]" (People v. Villalobos (2006) 145 Cal.App.4th 310, 322, 51 Cal.Rptr.3d 678; see also People v. Morales (2003) 112 Cal. App.4th 1176, 1198-1199, 5 Cal.Rptr.3d 615 ["defendant's intentional acts, when combined with his knowledge that those acts would assist crimes by fellow gang members, afforded sufficient evidence of the requisite specific intent"].)

Sufficiency of the Evidence, Section 186.22(b)(1)
Section 186.22, subdivision (b)(1), provides an enhanced sentence for "any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members...." Appellants contend that the evidence is insufficient to show (1) that they committed the rape and sexual penetration offenses for the benefit of or in association with Southside Chiques, and (2) that they had the requisite specific intent.
"`"When the sufficiency of the evidence is challenged on appeal, the court must review the whole record in the light most favorable to the judgment to determine whether it contains substantial evidencei.e., evidence that is credible and of solid valuefrom which a rational trier of fact could have found the defendant guilty beyond a reasonable doubt.'" [Citations.]' [Citation.]. We resolve all conflicts in favor of the judgment and indulge all reasonable inferences from the evidence in support of the judgment. [Citation.] This standard applies to ... gang *395 enhancement findings [citation]." (People v. Villalobos, supra, 145 Cal.App.4th at 321-322, 51 Cal.Rptr.3d 678.) "In order to prove the elements of the criminal street gang enhancement, the prosecution may, as in this case, present expert testimony on criminal street gangs. [Citation.]" (People v. Hernandez, supra, 33 Cal.4th at p. 1047, 16 Cal.Rptr.3d 880, 94 P.3d 1080.)
Substantial evidence supports the jury's determination that the crimes were committed for the benefit of or in association with Southside Chiques. This was a question of fact for the trier of fact. Detective Holland explained: "When three gang members go out and commit a violent brutal attack on a victim, that's elevating their individual status [within the gang], and they're receiving a benefit. They're putting notches in their reputation. When these members are doing that, the overall entity [the gang] benefits and strengthens as a result of it." "[O]ne of the most important [reasons] why gang members commit crimes together is the value of one gang member witnessing another gang member committing the crime because that gang member can share it with others or keep it within the group and bolster this person's status by their level of participation in the crime...." "More than likely this crime is reported as not three individual named Defendants [committed] a rape, but members of SouthSide Chiques [committed] a rape, and that goes out in the community by way of mainstream media or by way of word of mouth. That is elevating South-Side Chiques' reputation to be a violent, aggressive gang that stops at nothing and does not care for anyone's humanity." Simply put, the jury credited this testimony.

Sufficiency Of The Evidence, Section 186.22(a)
Section 186.22, subdivision (a), provides: "Any person who actively participates in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang," is guilty of an offense punishable as either a felony or a misdemeanor. "The provision 'punishes active gang participation where the defendant promotes or assists felonious conduct by the gang. It is a substantive offense whose gravamen is the participation in the gang itself. [Citation.]' Thus, it `applies to the perpetrator of felonious gang-related criminal conduct....' [Citation.]" People v. Ferraez (2003) 112 Cal.App.4th 925, 930, 5 Cal.Rptr.3d 640.
Appellants contend that the evidence is insufficient to show that they engaged in gang-related criminal conduct. However, as discussed above, substantial evidence shows that their conduct was gang related.

No Violation of First Amendment Right of Freedom of Association
Albert contends that the true findings on the gang enhancements and his conviction on the gang charge violated his First Amendment right of freedom of association. Albert argues that he, "his brother [Alex], and his cousin [Madrigal] have a First Amendment right to associate with one another as family members." "In this case, gang membership is indivisible from family membership...." "There was no gang crime here. There was a family crime. To further punish or exacerbate appellant's punishment because of his family ties violates his fundamental right of intimate association."
Albert concedes that he failed to raise the First Amendment issue in the trial court. His constitutional claim, therefore, is waived. (People v. Waidla (2000) 22 Cal.4th 690, 718, fn. 4, 94 Cal.Rptr.2d *396 396, 996 P.2d 46; People v. Carpenter (1997) 15 Cal.4th 312, 362, 63 Cal.Rptr.2d 1, 935 P.2d 708.) In any event, the claim lacks merit. Appellants were not prosecuted for associating with family members. Familial relationship is not a defense to a gang charge or gang enhancement. Engaging in criminal gang activities does not fall within the freedom of association protected by the First Amendment. (People ex rel. Gallo v. Acuna (1997) 14 Cal.4th 1090, 1110-1112, 60 Cal.Rptr.2d 277, 929 P.2d 596.) In our view, the precision in which this forcible rape "in concert" was accomplished shows criminal street gang teamwork, not simple familial teamwork. The inference that it has something to do with a criminal street gang, as opposed to a simple family relationship, is strong, if not compelling.

The Trial Court Did Not Err In Denying Appellants' Motion for a New Trial
In their written motion for a new trial, appellants contended that the evidence was insufficient to support the gang enhancements and the gang convictions and that the gang evidence prejudiced the jury against them.
In denying the motion for a new trial, the court concluded that the probative value of the gang evidence outweighed its prejudicial impact. The court also considered that the jury had been instructed on the limited purpose of the gang evidence. It "presume[d] that they [had] followed the Court's instructions."
"`"The determination of a motion for a new trial rests so completely within the court's discretion that its action will not be disturbed unless a manifest and unmistakable abuse of discretion clearly appears."' [Citation.]" (People v. Carter (2005) 36 Cal.4th 1114, 1210, 32 Cal. Rptr.3d 759, 117 P.3d 476.) The trial court did not abuse its discretion.

Disposition
The judgment is affirmed.
We concur: GILBERT, P.J., and PERREN, J.
NOTES
[1] Except as otherwise noted, all statutory references are to the Penal Code.
[2] Wheeler was disapproved on another ground in Johnson v. California (2005) 545 U.S. 162 [125 S.Ct. 2410, 162 L.Ed.2d 129].
[3] "Although [appellants'] implied consent to the alternate remedy may be discerned from the record in the present case, we emphasize that it would be preferable and advisable for the trial court to ensure that the record reflects the express consent of the prevailing party whenever an alternate remedy ... is employed. An express consent ensures both that the aggrieved party has received a remedy the party deems appropriate to redress the constitutional violation found by the court and that the record will reflect the party's assent should the question arise on appeal. The time required to obtain from the prevailing party's counsel a brief but explicit waiver of the dismissal of the entire venire and consent to the remedy selected is minimal, particularly in light of the requirement of a retrial if consent or waiver is not expressly secured and cannot be inferred from the record." (People v. Overby, supra, 124 Cal.App.4th at pp. 1245-1246, 22 Cal.Rptr.3d 233.)
[4] Appellants argue that, if the trial court had severed the gang charge, that charge could have been tried before the same jury after it had rendered a verdict on the other charges. This procedure allegedly would have conserved resources by avoiding the selection of a new jury. But appellants cite no authority allowing separate trials on severed counts before the same jury. In People v. Hernandez, supra, 33 Cal.4th at p. 1050, 16 Cal.Rptr.3d 880, 94 P.3d 1080, our Supreme Court stated that "severance requires selection of separate juries."