Opinion
CHIN, J.
In People v. Wheeler (1978) 22 Cal.3d 258 [148 Cal.Rptr. 890, 583 P.2d 748] (Wheeler), this court held that, if a jury “has been partially or totally stripped of members of a cognizable group by the improper use of peremptory challenges,” the trial court “must dismiss the jurors thus far selected” and “quash any remaining venire.” (Id. at p. 282.) However, in People v. Willis (2002) 27 Cal.4th 811 [118 Cal.Rptr.2d 301, 43 P.3d 130] (Willis), we decided that trial courts are not limited to dismissing the entire venire as the only remedy in the case of a Wheeler violation: “Under such circumstances, and with the assent of the complaining party, the trial court should have the discretion to issue appropriate orders short of outright dismissal of the remaining jury, including . . . reseating any improperly discharged jurors if they are available to serve.” (Willis, supra, 27 Cal.4th at p. 821, italics added.)
Here we consider whether implied consent can constitute the “assent of the complaining party” (Willis, supra, 27 Cal.4th at p. 821), in the context of a trial court’s order to reseat an improperly discharged prospective juror after the court had granted the complaining party’s Wheeler motion. We conclude that assent can be found on the basis of implied consent and that, in this case, defendant did impliedly consent to the alternative remedy of reseating the improperly discharged juror. Accordingly, we reverse the judgment of the Court of Appeal, which held otherwise.
*182 I. FACTUAL AND PROCEDURAL BACKGROUND
On December 21, 2009, Los Angeles police officers saw defendant and Earl Early stop next to Anthony Coleman. Coleman spit a plastic-wrapped item into his own hand, removed a small white object from the plastic, gave that object to Early, and took cash from Early. When defendant was detained, he was holding a rock of cocaine base. At the jail, defendant attacked the two officers as they were trying to escort him to a holding tank.
A jury convicted defendant of possession of cocaine (Health & Saf. Code, § 11350, subd. (a)), and two misdemeanor counts of resisting a peace officer (Pen. Code, § 148, subd. (a)(1)). The trial court sentenced defendant to two years in state prison. Defendant appealed, contending the trial court committed reversible error when, after finding that the prosecution improperly used a peremptory challenge to discharge a prospective African-American juror under Wheeler, supra, 22 Cal.3d 258, it reseated the juror instead of discharging the entire jury venire. The Court of Appeal reversed defendant’s conviction, finding that defendant did not “expressly or implicitly consent[]” to the court’s remedy of reseating of the improperly discharged juror. We granted the People’s petition for review.
II. DISCUSSION
In 1978, our opinion in Wheeler acknowledged that “the peremptory challenge is not a constitutional necessity but a statutory privilege.” (Wheeler, supra, 22 Cal.3d at p. 281, fn. 28.) We concluded that “when a party presumes that certain jurors are biased merely because they are members of an identifiable group distinguished on racial, religious, ethnic, or similar grounds . . . and peremptorily strikes all such persons for that reason alone, he not only upsets the demographic balance of the venire but frustrates the primary purpose of the representative cross-section requirement” (Wheeler, supra, 22 Cal.3d at p. 276), which we noted is a fundamental component of the “right to an impartial jury” (id. at p. 270). We held that, in our state, “the right to trial by a jury drawn from a representative cross-section of the community is guaranteed equally and independently by the Sixth Amendment to the federal Constitution and by article I, section 16, of the California Constitution.” (Wheeler, supra, 22 Cal.3d at p. 272.) We also held that, if a jury “has been partially or totally stripped of members of a cognizable group by the improper use of peremptory challenges,” the trial court “must dismiss the jurors thus far selected” and “quash any remaining venire.” (Id. at p. 282.)
Eight years after our holding in Wheeler, the United States Supreme Court held that “the State’s privilege to strike individual jurors thorough peremptory challenges ... is subject to the commands of the Equal Protection *183 Clause.” (Batson v. Kentucky (1986) 476 U.S. 79, 89 [90 L.Ed.2d 69, 106 S.Ct. 1712].) In Batson, the court set forth the procedures that should be followed once a defendant alleges purposeful discrimination in the selection of the venire. (Batson, supra, 476 U.S. 94-99.) As did Wheeler, Batson noted that the federal Constitution does not guarantee a right to peremptory challenges, and the Batson court declined to formulate particular procedures to be followed after a successful objection to a peremptory challenge. (Batson, supra, 476 U.S. at p. 99.) The United States Supreme Court specifically noted that, “[i]n light of the variety of jury selection practices followed in our state and federal courts, we make no attempt to instruct these courts how best to implement our holding today. For the same reason, we express no view on whether it is more appropriate ... for the trial court to discharge the venire and select a new jury from a panel not previously associated with the case [citation] or to disallow the discriminatory challenges and resume selection with the improperly challenged jurors reinstated on the venire . . . .” (Batson, supra, 476 U.S. at p. 99, fn. 24.)
In Willis, supra, 27 Cal.4th 811, we reconsidered what procedures our trial courts should follow after a successful Wheeler objection to a party’s peremptory challenge. We noted “the need for the availability of some discretionary remedy short of dismissal of the remaining jury venire” and that the federal Constitution does not compel the remedy prescribed by Wheeler. (Willis, supra, 27 Cal.4th at p. 818.) We then concluded that “the benefits of discretionary alternatives to mistrial and dismissal of the remaining jury venire outweigh any possible drawbacks . . . [and that] situations can arise in which the remedy of mistrial and dismissal of the venire accomplish nothing more than to reward improper voir dire challenges and postpone trial. Under such circumstances, and with the assent of the complaining party, the trial court should have the discretion to issue appropriate orders short of outright dismissal of the remaining jury [venire], including assessment of sanctions against counsel whose challenges exhibit group bias and reseating any improperly discharged jurors if they are available to serve.” (Id. at p. 821.) In Willis, we noted that “waiver or consent is a prerequisite to the use of such alternative remedies or sanctions, for Wheeler made clear that ‘the complaining party is entitled to a random draw from an entire venire’ and that dismissal of the remaining venire is the appropriate remedy for a violation of that right. [Citation.] Thus, trial courts lack discretion to impose alternative procedures in the absence of consent or waiver by the complaining party. On the other hand, if the complaining party does effectively waive its right to mistrial, preferring to take its chances with the remaining venire, ordinarily the court should honor that waiver rather than dismiss the venire and subject the parties to additional delay.” (Willis, supra, 27 Cal.4th at pp. 823-824.)
In Willis, defense counsel unsuccessfully moved to dismiss the venire as underrepresentative of African-Americans, then used seven of 11 peremptory *184 challenges to remove White males from the jury. After the prosecutor made a Wheeler motion, the trial court found systematic exclusion of a protected class, and asked the prosecutor, “[W]hat do you want me to do?” (Willis, supra, 27 Cal.4th at p. 815.) Noting that excusing the panel would give the defendant what he sought, the prosecutor instead asked the court to admonish defense counsel and to sanction him if the misconduct continued. (Willis, supra, 27 Cal.4th at pp. 814-815.) The defendant moved for a mistrial, contending the court should quash the entire venire. In denying the motion, the court voiced its “suspicion” that the defense was committing Wheeler error in the hope that the court would dismiss the venire. The court did not excuse the venire or reseat any improperly excused jurors, and jury selection resumed. The prosecutor made a second Wheeler motion based on the defendant’s use of eight of his next nine peremptory challenges to strike White males, and the court ultimately found that the defendant had violated Wheeler again, and it imposed $1,500 in monetary sanctions on defense counsel. The defendant’s renewed motion for mistrial was denied, and the court did not reseat any improperly challenged jurors or quash the venire. (Willis, supra, 27 Cal.4th at p. 816.)
In rejecting Willis’s claim on appeal that the trial court erred by not dismissing the venire, we held that if the complaining party succeeds in showing that opposing counsel has improperly exercised peremptory challenges to exclude members of a cognizable group, “the trial court, acting with the [injured party]’s assent, [has] discretion to consider and impose remedies or sanctions short of outright dismissal of the entire jury venire.” (Willis, supra, 27 Cal.4th at p. 814.)
In People v. Overby (2004) 124 Cal.App.4th 1237 [22 Cal.Rptr.3d 233] (Overby), the first time the prosecutor exercised a peremptory challenge against an African-American juror, counsel for Overby asked the trial court to order the juror to remain in the courtroom, and then made her Wheeler motion. The court granted the motion and said, “ ‘I’m going to elect the remedy to reseat Number 9 rather than the remedy to kick the entire panel.’ ” (Overby, supra, 124 Cal.App.4th at pp. 1242-1243.) Asked if they wished to be heard “ ‘as to the court’s decision,’ ” both defense counsel said, “ ‘Submit,’ ” and the prosecutor objected. (Id. at p. 1243.) The challenged juror was reseated and voir dire resumed. The prosecutor later made an unsuccessful Wheeler motion and then sought reconsideration of the rulings on the defense and prosecution motions and requested that the court dismiss the venire. “At no time during the reconsideration arguments did Overby’s counsel state that she agreed that the venire should be dismissed, nor did she indicate any dissatisfaction with the remedy chosen by the court.” (Ibid.)
The Court of Appeal in Overby held the consent required by Willis could be given by counsel, rather than the defendant himself. (Overby, supra, 124 *185 Cal.App.4th at p. 1243.) It then concluded defense counsel implicitly had consented to the trial court’s remedy. Overby relied on the fact that defense counsel had asked the court to prevent the challenged juror from leaving, had responded “ ‘Submit’ ” when offered the opportunity to comment on the court’s chosen remedy, and had failed to “alter her position or indicate dissatisfaction with the reseating remedy even after having time and opportunity to consider it further” when the prosecutor sought reconsideration of the Wheeler rulings. (Overby, supra, 124 Cal.App.4th at pp. 1244-1245.) Overby noted that our court “did not specify in Willis what constitutes consent to an alternate remedy or an effective waiver of the right to a mistrial” within the “assent” standard articulated in that case. (Overby, supra, 124 Cal.App.4th at p. 1242.)
We now have occasion to address that issue. The People interpret Willis as providing alternative remedies at the discretion of the trial court to further the court’s interest in efficiently processing cases for trial. They argue that, except when fundamental constitutional rights are implicated, the complaining party’s consent should be implied when that party fails to object and continues to participate in a potentially objectionable proceeding. In response, defendant contends quashing the venire is the “default remedy” following a successful Wheeler motion, unless the complaining party “waives that right and consents to an alternative remedy.” He interprets our use of the words “waiver” and “consent” in Willis as requiring that “the complaining party [have] knowledge of the right being relinquished or abandoned, and that the complaining party intentionally relinquish^] or abandon[] that right.” Defendant concedes that defense counsel can waive the right to quash the venire and consent to an alternative remedy, but he contends “counsel’s mere silence cannot constitute a waiver and that, on this record, there is an insufficient basis to conclude that defense counsel impliedly waived [defendant’s] right to quash the venire.” For the reasons stated below, we find the People’s position more persuasive.
Willis approved the trial court’s consideration of discretionary alternatives to mistrial and dismissal of the remaining jury venire. Its recognition that the trial court may proceed with such alternative orders only with the assent of the complaining party safeguards the injured party’s interest in an appropriate remedy to the improper discharge of a potential juror based on group bias.
We agree with the court in Overby that the assent required by Willis can be given by defense counsel. The Overby court explained that, “[a]s a general rule, counsel ‘has the general authority to control the procedural aspects of the litigation and, indeed, to bind the client in these matters.’ (In re Horton (1991) 54 Cal.3d 82, 94 [284 Cal.Rptr. 305, 813 P.2d 1335].)” (Overby, supra, 124 Cal.App.4th at p. 1243.) “The right to request a mistrial or to elect to continue with a particular jury is not one of the constitutional *186 rights deemed to be so personal and fundamental that it may only be personally waived by the defendant. [Citations.]” (Ibid.) Accordingly, counsel here could assent in the trial court’s proposed remedy and thereby waive defendant’s right to a mistrial and a new jury venire. (In re Horton, supra, 54 Cal.3d at p. 95 [as to “fundamental rights of a less personal nature, courts may assume that counsel’s waiver reflects the defendant’s consent in the absence of an express conflict”].)
Additionally, we find that by failing to object to the trial court’s proposed alternative remedy when the opportunity to do so arises, the complaining party impliedly waives the right to the default remedy of quashing the entire venire and impliedly consents to the court’s proposed alternative remedy. “Assent,” the term we used in Willis, encompasses positive agreement as well as passive concession. Our discussion of implied consent in People v. Toro (1989) 47 Cal.3d 966 [254 Cal.Rptr. 811, 766 P.2d 577] (Toro) also supports this conclusion. In Toro, we held that consent to instructions on an uncharged lesser related offense could be inferred from defense counsel’s failure to object, and that such failure to object “bar[s] a contention based on lack of notice.” (Id. at p. 977; see, e.g., Barsamyan v. Appellate Division of Superior Court (2008) 44 Cal.4th 960, 969-970 [81 Cal.Rptr.3d 265, 189 P.3d 271] [waiver of statutory speedy trial rights may be inferred from silence]; People v. Gutierrez (2003) 29 Cal.4th 1196, 1206 [130 Cal.Rptr.2d 917, 63 P.3d 1000] [through his or her conduct, a defendant may impliedly waive the right to be present at trial].) In support of our holding in Toro, we observed that “[l]esser related offense instructions generally are beneficial to defendants and in a given case only the defendant knows whether his substantial rights will be prejudicially affected by submitting a lesser related offense to the jury.” (Toro, supra, 47 Cal.3d at p. 977.)
The same is true here. Only the complaining party can assess in a particular case whether the proposed alternative remedy, such as the reseating of an improperly discharged juror, is more or less beneficial than the default remedy of quashing the entire jury venire. For the same reasons expressed in Toro, we conclude that the complaining party’s assent to the trial court’s proposed alternative remedy may be found based on the failure to object, unless the trial court’s actions effectively preclude a meaningful opportunity to object. In turn, we conclude that, by impliedly consenting to the alternative remedy, the complaining party waives the right to the default remedy of quashing the jury venire.
In order to decide whether defense counsel assented to the court’s remedy of reseating the improperly discharged juror here, we review in detail the proceedings that both preceded and followed the court’s granting of defendant’s Batson-Wheeler motion with regard to Prospective Juror No. 2473.
*187 During jury selection, the prosecutor exercised his 11th peremptory challenge, against Prospective Juror No. 2473. Defense counsel asked “for a side bar after [Juror No. 2473] leaves.” The trial court then asked Prospective Juror No. 2473 to “remain in [her] seat for a moment.” At the bench and out of the jury’s hearing, defense counsel stated that he was “bringing a Wheeler motion based on the fact that [Prospective Juror No. 2473 is] part of an identifiable group” and that there appeared to be no race-neutral “basis” to remove her from the jury. Defense counsel also noted that “this is the second African-American within the last few challenges [the prosecution] has tried to take off.” The trial court commented that Juror No. 2473’s responses to questions had been “very neutral,” and then asked the prosecutor for “[his] thoughts.” The prosecutor replied that he had “been watching her” and “didn’t find her to be as engaging.” He found her to be “kind of quiet” and “tuned out,” and he “wanted somebody who is a little bit more . . . engaging.”
The trial court concluded the prosecutor did not have a race-neutral justification for the peremptory challenge, based on the “lack of questioning” and the fact that the court had not “notice[d] anything [about] her body language.” The court ruled that it was going to disallow the challenge. It then ordered that the juror remain seated. The prosecutor responded, “Okay.” The court then told the prosecutor, “If you would like to exercise a challenge to another juror, you may. And we will continue the process.” The prosecutor again replied, “Okay” and the court said, “All right.”
Defense counsel did not ask that the venire be dismissed, nor did he express dissatisfaction with the trial court’s remedy. Instead, he and the prosecutor turned their attention to the next juror in the venire. Defense counsel asked the prosecutor whether he would “challenge her,” adding, “We can talk about that, if you challenge her,” and asking the prosecutor to “[t]hink about it.” The prosecutor then passed the jury, accepting the panel as currently constituted. Defense counsel next thanked and excused a different juror, and jury selection continued with Juror No. 2473, the challenged juror, still seated.
. The trial court next conducted its own voir dire of several prospective jurors. After the prosecutor and both defense attorneys passed the jury for cause and the defense attorneys chose not to exercise any peremptory challenges, the prosecutor excused a male prospective juror, Juror No. 2149. Another prospective juror, Juror No. 6931, took the excused juror’s seat. After both defense counsel accepted the panel as currently constituted, the prosecutor announced that he would like to thank and excuse Prospective Juror No. 0207. Defense counsel then said, “Your honor, I’d ask that she remain while we have a sidebar.” (Italics added.)
*188 At the bench, defense counsel brought a second Batson-Wheeler motion based on the prosecutor’s use of his peremptory challenge on another African-American, Prospective Juror No. 0207. The trial court indicated its belief that defense counsel had not established a prima facie case, but even if the defense had done so, the prosecutor had several legitimate race-neutral justifications for exercising this peremptory challenge. In denying the Batson-Wheeler motion as to Prospective Juror No. 0207, the trial court told defense counsel, “Your request to have this juror remain seated is denied.” (Italics added.) Defense counsel offered no comment or clarification in response.
We infer defendant’s consent to the trial court’s discretionary decision to order a remedy short of outright dismissal of the remaining jury venire based on his counsel’s failure to object to the reseating of Juror No. 2473. After defendant’s Wheeler motion was granted, the trial court proposed the alternative remedy of reseating Juror No. 2473 at a sidebar conference after asking the prospective juror to remain seated. Defense counsel was given a meaningful opportunity to object to the alternative remedy at that time but failed to do so.
We decline defendant’s invitation to speculate that his counsel’s silence may have signified he was unaware of defendant’s right to quash the venire. “We assume that counsel knew the law as it stood at the time of the trial.” (People v. Odom (1969) 71 Cal.2d 709, 717 [78 Cal.Rptr. 873, 456 P.2d 145].) Here, defense counsel, having cited Wheeler in arguing that the prosecution had improperly discharged Juror No. 2473 based on race, was familiar with the default remedy of quashing the entire jury venire set forth in that opinion. (Wheeler, supra, 22 Cal.3d at p. 282.) Subsequently, when defense counsel made his second Batson-Wheeler motion, he requested that that discharged juror remain seated in the event his motion was granted, and the trial court highlighted counsel’s preference for this remedy when it referred to the second Batson-Wheeler motion as defense counsel’s “request to have this [discharged] juror remain seated.” Defense counsel’s request that Juror No. 0207 remain seated while his motion was argued at a sidebar conference indicates that counsel understood the available alternative remedies, and we can infer that counsel would have objected had he wanted a different remedy on the prior occasion.
Accordingly, we conclude that defense counsel’s consent to the alternative remedy of reseating the improperly discharged juror can be implied from his failure to object to the proposed remedy. (Toro, supra, 47 Cal.3d at pp. 976-977.) As noted above, by impliedly consenting to the alternative remedy, defense counsel waived the right to the default remedy of dismissing the jurors already selected and quashing the remaining jury venire.
*189 HI. DISPOSITION
The judgment of the Court of Appeal is reversed, and the matter is remanded to that court for further proceedings consistent with this opinion.
Cantil-Sakauye, C. J., Baxter, J., Corrigan, J., and Liu, J., concurred.