Filed 11/3/14  In re Oscar S. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION SEVEN

| | |
|---|---|
| In re OSCAR S., a Person Coming Under the Juvenile Court Law. | B253794<br>(Los Angeles County<br>Super. Ct. No. DK01778) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>Y.B.,<br><br>     Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County. Veronica S. McBeth, Judge.  (Retired Judge of the L.A. Sup. Ct., assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed as modified.

Linda J. Vogel, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Steven D. Watson, Deputy County Counsel, for Plaintiff and Respondent.

_____

Y.B. (Mother) is the mother of Oscar S. (Oscar), born January 2007. Oscar S. (Father) was found to be his presumed father.[1] Mother appeals from the jurisdictional and dispositional orders issued on December 30, 2013, placing Oscar under the jurisdiction of the juvenile court, pursuant to Welfare and Institutions Code section 300, subdivision (b),[2] removing him from Mother's custody and placing him with his maternal grandmother. We amend the minute order of December 30, 2013 to conform with the court's oral findings sustaining count (b-1) and affirm as modified.

*FACTUAL & PROCEDURAL BACKGROUND*

On March 10, 2013, the Los Angeles County Department of Children and Family Services (DCFS) received a referral that Mother was emotionally and physically abusing Oscar. At the time, Oscar was six years old. He and Mother were living in Pomona with his maternal grandmother, Guadalupe B., and his maternal uncle, Juan B. Mother had locked herself in the bathroom with Oscar and made him vomit by sticking a toothbrush down his throat.[3] Pomona police officers responded and Mother told them that someone was trying to kidnap her and that Guadalupe B. had poisoned their food. Mother's sister told police that Mother had been acting "bipolar" lately and had made bizarre comments about food poisoning by Oscar's maternal grandfather.

Police placed Mother, then 25 years old, on an involuntary 72-hour hold and left Oscar in the care of Guadalupe B. At the hospital, Mother tested positive for methamphetamine. Mother admitted she had smoked methamphetamine the previous evening.

---

[1]    Father is not a party to this appeal.

[2]    All further undesignated statutory references shall be to the Welfare and Institutions Code.

[3]    Although the social worker's report stated that Oscar and Guadalupe B. both reported Mother used a toothbrush, the police report indicated it was her finger.

2

Guadalupe B. told the social worker she believed Mother was depressed because she was always in her bedroom and was very angry. Guadalupe said Mother had acted very strangely recently when Guadalupe bought Oscar new clothes. Mother tore the clothes with scissors. Guadalupe, however, said Mother had never been hospitalized for mental problems and attributed the incident to Mother's drug use. Guadalupe said Oscar was crying, gagging and vomiting.

Juan B. told the social worker that on the morning of the incident, Mother told Oscar not to eat breakfast because his food was being poisoned. Juan B. also said Mother imagined she heard sirens and also told Juan not to eat his food. Juan described it as an isolated incident, but admitted Mother had used drugs in the past.

On March 13, 2013, DCFS held a Team Decision Making meeting where it was agreed that Mother would move out of the home and Oscar would remain there with Guadalupe B. Later that month, Mother enrolled at the Prototypes outpatient center where she was scheduled to undergo random drug testing and participate in counseling. On April 19, 2013, Mother agreed to a Voluntary Family Reunification Plan in which she would complete mental health counseling, parenting classes, and drug abuse counseling, including random drug testing.

Mother failed to submit to scheduled drug tests on April 26, 2013, and May 14, 2013. She tested negative on May 6, 2013. She failed to submit to scheduled drug tests on June 13, June 25, July 10, July 29, August 6, September 4, and September 24, 2013. She tested negative on August 20, 2013.

In June 2013, Mother was terminated from the Prototypes patient program. The program representative reported that Mother never came back to scheduled services, had not made contact with the counselor to return, and had been unreachable.

On October 15, 2013, DCFS filed a petition pursuant to section 300, subdivision (b), alleging Mother had a history of substance abuse and was a current user of methamphetamine (count b-1) and that Mother had a history of mental and emotional problems (count b-2), endangering Oscar's physical health and safety, placing him at risk of physical harm, damage and danger.

3

On October 15, 2013, Oscar was ordered detained and placed with Guadalupe B. Mother was allowed monitored visits for four hours per week.

On November 27, 2013, DCFS filed a First Amended Petition which added allegations regarding Father (in counts a-1, b-3, and b-4). The First Amended Petition alleged: in count (a-1), domestic violence between Mother and Father caused serious physical harm pursuant to section 300, subdivision (a); in count (b-1) that Mother had a history of substance abuse which endangers the child's physical health and safety and places him at risk of physical harm, damage and danger; in count (b-2) that Mother had mental and emotional problems which endangers the child's physical health and safety, placing the child at risk of physical harm and damage; in count (b-3) that Mother and Father's domestic violence endangered the physical health and safety of the minor placing him at risk of physical harm, damage, danger and failure to protect; and in count (b-4) that Father's substance abuse endangered the child's physical health and safety and placed him at risk of physical harm, damage and danger.

In a report prepared for a December 2, 2013 hearing, the social worker stated Mother told her she had used methamphetamine in high school but had not been using it again until November 2012, and then only smoked on weekends in her bedroom when Oscar was not present. She said she most recently used methamphetamine in August 2013. Mother denied having any mental problems and said she had never been hospitalized before the March 2013 incident.

Father, who did not live with Mother and visited Oscar only sporadically, told the social worker that Mother had used methamphetamine and marijuana when she was 16 years old. He always thought "she was bipolar."

On December 30, 2013, an adjudication hearing was held. The court found that Mother was a current user and noted that she failed to take many drug tests. The court stated it was striking count (a-1) (serious physical harm caused by domestic violence). The record then becomes unclear as to the court's remaining findings. It then stated, "B-2 – I will get back to that in a moment. B-2 I am sustaining as it is plead. [¶¶] I am finding that she is a current user. . . . With respect to b-2 – so I don't have any problem at

all finding Mother as a current user and that this places the child at risk of harm. Mother it appears did have some kind of mental breakdown. [¶¶] B-3 – I am sustaining it, but I am taking Mother out. . . ." It then amended b-2 to Mother "'has exhibited mental and emotional problems, including delusions and auditory hallucinations, which render' – and the rest as it is plead."

The minute order indicates the court dismissed counts a-1 and b-4, sustained count b-2 and sustained count b-3 as to Father only. Neither the court's oral pronouncement nor the minute order expressly addresses count b-1. Nonetheless, the parties agree the court intended to sustain count b-1, as well as b-2, and to sustain count b-3 as to Father only. The court's markings on the filed version of the amended petition confirm that intention.

The court found Oscar to be a dependent as described by section 300 and that it would create a substantial risk of harm if he were returned to the parents and ordered removal. Mother and Father were allowed separate monitored visitation and Mother was ordered to receive counseling services.

Mother contends there was insufficient evidence to support the juvenile court's decision to sustain counts (b-1) and (b-2) of the petition. She claims there is no evidence that Oscar was at substantial risk of suffering serious physical harm either from her failure to supervise or protect him adequately or her inability to provide regular care for him due to her mental illness or substance abuse. She also contends there was no evidence of any mental illness.

*DISCUSSION*

We review the juvenile court's jurisdictional and dispositional findings for substantial evidence. (*In re David M.* (2005) 134 Cal.App.4th 822, 828; *In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1654.) Substantial evidence is evidence that is "reasonable, credible, and of solid value." (*In re Yvonne W.* (2008) 165 Cal.App.4th 1394, 1401.) A mere scintilla of evidence is not enough. (*In re B.T.* (2011) 193 Cal.App.4th 685, 691.) We examine the record in the light most favorable to the juvenile court's findings and conclusions and defer to its rulings on issues of credibility of the evidence. (*In re*

5

*Savannah M.* (2005) 131 Cal.App.4th 1387, 1393; *In re Tania S.* (1992) 5 Cal.App.4th 728, 733.) The ultimate test is whether it was reasonable for the trier of fact to make the ruling in question in light of the whole record. (*In re Savannah M, supra,* 131 Cal.App.4th at p. 1393.)

Section 300, subdivision (b) provides the dependency court may assume jurisdiction where "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, . . . or by the willful or negligent failure of the parent or guardian to provide the child with adequate food, clothing, shelter, or medical treatment, or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse. . . ." In order to make a jurisdictional finding under section 300, subdivision (b), the court must find: "(1) neglectful conduct by the parent in one of the specified forms; (2) causation; and (3) 'serious physical harm or illness' to the [child], or a 'substantial risk' of such harm or illness." (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 820.) "[T]he purpose of section 300, subdivision (b) is to protect the child from a substantial risk of future serious physical harm and that risk is determined as of the time of the jurisdictional hearing." (*In re Savannah M., supra,* 131 Cal.App.4th at p. 1397.) An appellate court can affirm a juvenile court judgment based on any one of the enumerated statutory bases which are supported by the evidence. (*In re Jonathan B.* (1992) 5 Cal.App.4th 873, 875.)

*1. Serious Physical Harm or Illness*

Mother contends there was no evidence that Oscar suffered serious physical harm or was at risk of suffering physical harm.

Although evidence of past conduct may be used to support a finding, the court must determine if there is a reason to believe the alleged conduct will recur. A parent's "'[p]ast conduct may be probative of current conditions' if there is reason to believe that the conduct will continue." (*In re S.O.* (2002) 103 Cal.App.4th 453, 461; accord, *In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1216.)

6

Mother had jammed either a toothbrush or a finger down Oscar's throat and was convinced someone was trying to poison his food. She could have seriously injured him while forcing the finger or toothbrush down his throat. In addition, her unreasonable belief may have led her to withhold food from him in the future. If Mother had been allowed to continue forcing him to vomit or telling him not to eat because she wrongly believed his food was poisoned, he would have suffered serious physical harm. There was substantial evidence to support the juvenile court's finding of a risk of serious physical harm. (*In re Mariah T.* (2008) 159 Cal.App.4th 428, 438-439.)

### 2. Drug abuse (Count b-1)

Count (b-1) of the First Amended Petition alleged that Mother "has a history of substance abuse including marijuana and is a current user of methamphetamine which renders the mother incapable of providing regular care and supervision of the child. In March 2013, the mother was under the influence of methamphetamine while the child was in the mother's care and supervision. In March 2013, mother had a positive toxicology screen for methamphetamine. The mother's substance abuse endangers the child's physical health and safety and places the child at risk of physical harm, damage and danger."

Mother argues that a parent's substance abuse, without more, is not enough to bring a minor within the jurisdiction of the dependency court.

Drug abuse may constitute neglectful conduct of the parent and may support jurisdiction under section 300, subdivision (b) when it constitutes a substantial risk of harm to the child. (*In re Kristin H., supra,* 46 Cal.App.4th at p. 1651; *In re Alexis E.* (2009) 171 Cal.App.4th 438, 451-452; *In re Samkirtana S.* (1990) 222 Cal.App.3d 1475, 1489, disapproved on another point in *In re Horton* (1991) 54 Cal.3d 82, 92-93.)

This case is distinguishable from *In re David M.* (2005) 134 Cal.App.4th 822 cited by appellant, in which both parents had mental health issues and mother had a substance abuse problem. In that case, there was absolutely no showing that the child was at risk of serious harm. (*Id*. at pp. 830-831.)

Here there was sufficient evidence establishing Mother's continuing drug use. The incident on March 10, 2013, was not just a one-time incident. (Compare with *In re J. N.* (2010) 181 Cal.App.4th 1010, 1019.) Mother tested positive when she was admitted to the hospital. Mother admitted she had used methamphetamine in the past, and had used it after the petition was filed. Mother admitted using methamphetamine when Oscar was not there. Mother had missed nine drug tests which were scheduled pursuant to a plan she had voluntarily agreed to. Numerous people confirmed that Mother was using drugs. The juvenile court could have inferred from the evidence of the missed tests that Mother was still using drugs and that her aberrant behavior was due to the drug usage. With continued drug use, there was a substantial risk she would again subject Oscar to harm by withholding food from him.

*3. Mental Illness*

Mother contends that harm to Oscar cannot be presumed from mental illness, and also points out that there is no evidence that she had any kind of psychiatric diagnosis or any prescription for psychotropic medication. Because we have found a basis for jurisdiction on the b-1 count, we need not address this issue. (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1491-1492.)

*DISPOSITION*

The minute order of December 30, 2013 is modified to reflect the juvenile court sustained count b-1. As modified, the orders are affirmed.

**WOODS, J.**

**We concur:**

**PERLUSS, P. J.**                    **SEGAL, J.**[*]

---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.